TRANSMATIC, INC., Plaintiff,

v.

GULTON INDUSTRIES, INC., Defendant.

No. 90–70987.

United States District Court,
E.D. Michigan, S.D.

March 31, 1993.

Richard Hoffman, Owen E. Perry, Troy, MI, for plaintiff.

Bernard Canter, Troy, MI, Ira Jay Levy, New York City, for defendant.

## OPINION AND ORDER

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Transmatic, Inc. ("Transmatic") instituted this patent infringement action in this Court on April 10, 1990. This Opinion and Order reflects the Court's ruling on the following pending motions: (1) Plaintiff's motion to lift the stay; (2) Defendant's motion to review the Magistrate Judge's decision regarding Defendant's motion to compel admissions and interrogatories; (3) Dismissed–Defendant Mark IV's motion for sanctions and attorney's fees; (4) Plaintiff's motion for order in limine to exclude expert witnesses, limit expert witness testimony, and exclude declarations in the record; (5) Cross-motions for partial summary judgment on the validity

of claim 1 of the patent-in-suit; (6) Plaintiff's motion for partial summary judgment of infringement; (7) Plaintiff's motion for partial summary judgment on whether the infringement was willful, whether damages should be increased to three times the amount, and whether this is an exceptional case entitling Plaintiff to attorney fees; and (8) Plaintiff's motion for partial summary judgment to dismiss Defendant's affirmative defense of inequitable conduct.

## II. *FACTUAL BACKGROUND*

Transmatic is the owner (by assignment from the inventor Mr. Ben V. Domas) of patent No. 4,387,415, which was duly issued on June 7, 1983 for an invention entitled "Cornice Lighting Fixtures." This is a lighting fixture that is placed in the cornice of mass transit vehicles, such as busses. It consists of an elongated concave trim panel ("trim panel") that holds an advertising card, and an elongated fluorescent light along to one edge of the card holder that illuminates the advertising card and provides general illumination for the vehicle. The light source is formed by a "light housing" and a diffusing "light cover" which together enclose a fluorescent light tube.

As described in the patent, the trim panel and light housing are parts of a unitary member, which is made as a pultrusion[1] from resin and glass fibers, and has a uniform cross-section along its length. The lighting fixture may form one wall of an air duct for ventilation in the vehicle. Thus, this fixture is a single-piece unit made from a pultrusion and lights the advertising cards

from the front (front-lighting fixture), as opposed to from the back (back-lighting fixture).[2]

In 1983, subsequent to the issuance of the patent-in-suit, Plaintiff reconfigured its trim panel. Plaintiff added an approximately three inch flange that extended above the light housing along the length of the housing, which had previously formed the upper edge of the illuminated device. This flange is incorporated into the pultruded fixture as one single piece and now itself forms the upper edge of the fixture. Defendant's accused fixture, manufactured subsequent to Plaintiff's reconfigured device, also incorporates this flange as a unitary pultruded part of the fixture.

The original complaint named Mark IV Industries ("Mark IV") as the Defendant and alleged that Mark IV was Plaintiff's competitor in selling lighting fixtures for buses. In a December 21, 1990 Order, this Court granted Defendant Mark IV's motion for summary judgment, because Mark IV only manufactured and sold this type of fixture (called the Luminator fixture) through its wholly-owned subsidiary Gulton Industries, Inc. ("Gulton"). In that order, however, the Court granted Plaintiff's motion to add Gulton as Defendant.

On January 7, 1992, this Court issued an Order staying the case pending the outcome of the Patent and Trademark Office's ("PTO") reexamination of the patentability of the instant fixture. On December 1, 1992 the PTO issued a reexamination certificate confirming the validity of the instant patent.[3]

---

1. Pultrusion is a glass-reinforced plastic material produced by pulling the material through a pultrusion die.

2. Claim 1 of the patent-in-suit reads as follows:
 A cornice lighting fixture for public transit vehicles, the lighting fixture comprising: a unitary member made as a pultrusion from resin and glass fibers so as to have an elongated shape with a uniform cross section along the length thereof, said unitary member including a light housing that defines one longitudinal margin of the fixture and a trim panel that extends vertically and horizontally from the light housing to define another longitudinal margin of the fixture, said light housing opening toward the direction in which light is to be provided for the fixture, said trim panel including one extremity defining the longitudinal fixture margin opposite the longitudinal fixture margin defined by the housing,

said one extremity of the trim panel having a tab adapted to mount one edge of an advertising card on the trim panel, said trim panel also including another extremity connected directly to the housing in a fixed relationship thereto and having another tab adapted to mount another edge of the advertising card such that the card is positioned immediately adjacent the light housing; an electrical connector support for mounting a fluorescent tube on the light housing; and a light cover for cooperating with the light housing to enclose a mounted fluorescent tube within the housing.

3. In fact, the PTO confirmed the patentability of claims 1 and 3–6. Although claim 1 is the only issue in this case, the Court notes that the PTO confirmed the validity of claim 2 after adding the word "single-piece" before the word unitary in

Having reviewed the parties' respective briefs and the exhibits attached thereto, and having heard counsels' oral arguments on February 4, 1993, the Court is now prepared to rule on the eight pending motions, and this Opinion and Order sets forth that ruling.[4]

## III. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions—*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5] According to the *Celotex* Court,

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex* at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

---

describing the fixture and making other minor changes.

The instant fixture has had quite a history: (1) the original application, filed April 30, 1979, was denied by examiner Hayes because he thought it was merely the application of already patented inventions (including the Arenberg invention, Patent No. 2,587,807, and Kalt invention, Patent No. 3,035,161, that also provide for front-lighting fixtures); (2) on August 8, 1980, examiner Hayes issued a final rejection after considering an amendment in response to his first action; (3) in November of 1980, Plaintiff filed a "continuing" application pursuant to 37 C.F.R. 1.60, which mandates that a party file a copy of the parent application along with a preliminary amendment making any changes desired; (4) on July 13, 1982, a new examiner, examiner Walsh, rejected most of the pending claims because they were unpatentable in light of other inventions (he did not reference the Arenberg and Kalt inventions but only referenced back-lighting fixtures); (5) on September 13, 1982, the attorney representing the owner of the instant fixture at that time, Mr. Kushman, filed an amendment indicating that the instant fixture is a front-lighted fixture;

(6) examiner Walsh reconsidered, deemed the fixture patentable, and on June 7, 1983, issued the instant patent; (7) during the pendency of the instant action, as a result of the instant Defendant's request for reexamination, the PTO agreed to reexamine the patent; (8) the PTO made an initial determination that the instant fixture was not patentable because it was obvious from the prior art; and (9) finally the PTO changed its mind and made a final determination that the instant fixture was patentable.

4. The Court notes that it did not hear oral argument on the motions regarding willful infringement and inequitable conduct because the Court is satisfied that it can rule on these motions upon reviewing the voluminous briefs filed by the parties. *See* Local Rule 7.1(e)(2).

5. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure*, § 2727, at 29 (1991 Supp.).

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the above principles in deciding the summary judgment motions in this case.

## B. *PLAINTIFF'S MOTION TO LIFT THE STAY.*

At the hearing, both parties consented to lifting the stay and, therefore, the Court grants this motion.

## C. *DEFENDANT'S MOTION TO REVIEW THE MAGISTRATE JUDGE'S DECISION DENYING ITS MOTION TO COMPEL ADMISSIONS AND INTERROGATORIES.*

On August 30, 1991, Magistrate Judge Morgan issued an Opinion and Order denying Defendant's motion to compel answers to the requests to admit and motion to compel certain interrogatories.

After conducting a hearing on said motion, the Magistrate Judge denied Defendant's motion because Defendant sought discovery that went to its burden of establishing invalidity pursuant to 35 U.S.C. § 282. In other words, the discovery requests sought impermissibly to shift the burden of proof from Defendant to Plaintiff, and the requests violated a major principle of patent law that the validity of the invention must be considered as a whole.[6]

■ The Magistrate Judge's Order is a non-dispositive discovery matter and, thus, the Court may only reverse the Magistrate

Judge's ruling if it was "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); Local Rule 72.1(d)(1).

### 1. Defendant's Arguments In Support Of Reversal.

Defendant specifically attacks the Magistrate Judge's order in many respects, including that the Magistrate Judge: (1) denied discovery into the obviousness factors; (2) erroneously labelled Defendant's requests to admit as seeking legal conclusions and interpretations; (3) erroneously applied the "as a whole" doctrine to limit discovery into the obviousness elements; (4) failed to realize that the requests were tailored to minimize the issues, time, and expense of trial; (5) erroneously found that the discovery would not lead to the discovery of admissible evidence; and (6) erroneously found that the disputed discovery sought conclusions of obviousness.

### 2. Plaintiff's Arguments In Support Of the Order.

Plaintiff insists that the order is not clearly erroneous because it recognizes that the discovery seeks to force Plaintiff to interpret documents that are already in Defendant's possession. Also, because the interrogatories require a detailed explanation of any response to a request for admission other than an unqualified admission, Plaintiff, for example, would have the burden of searching all prior art to determine what specific portion of its design, if any, existed.

### 3. The Magistrate Judge's Order is not Clearly Erroneous or Contrary to Law.

■ The Magistrate Judge's Order is not clearly erroneous or contrary to law and, therefore, the Court refuses to reverse it. As the Court noted at the hearing, although the Court would probably have granted this motion to compel, that is not the issue. Rather, the Court may only reverse the Mag-

---

6. Apparently, the Magistrate Judge was persuaded by Plaintiff's argument that the requested discovery would be unduly burdensome. For example, it would have been burdensome for Plaintiff to admit that cornice lighting fixtures for public transit vehicles were in the prior art, because such an admission would require Plaintiff to search every invention ever patented in order to respond.

istrate Judge's order if clearly erroneous or contrary to law, and the Magistrate Judge's ruling positively does not meet that standard, since the discovery could be viewed as over-burdensome and as shifting the burden of demonstrating invalidity from Defendant to Plaintiff. Also, the Court notes that the issues on which Defendant sought discovery are presently known to Defendant since Plaintiff's numerous summary judgment briefs detail Plaintiff's position on the issues in the case, including whether Plaintiff thinks the fixture existed in the prior art. Therefore, Defendant has not been prejudiced by the Magistrate Judge's order.

## D. MOTION BY DISMISSED DEFENDANT MARK IV FOR SANCTIONS AND ATTORNEY FEES.

### 1. Mark IV's Arguments in Support of Its Motion.

■ Dismissed Defendant Mark IV moves for Rule 11 sanctions and attorneys' fees [7] against Plaintiff. In its motion, Mark IV claims that Plaintiff originally filed the action against Mark IV even though a reasonable inquiry would have demonstrated that Mark IV's subsidiary, Gulton, was truly the party in interest. Mark IV argues that Plaintiff did this because it could not obtain personal jurisdiction over Gulton in this Court but would have had to file its case in federal court in Texas.

Mark IV offers as evidence that Plaintiff already had been involved in litigation with Gulton and thus knew that Gulton was the true party in interest. In addition, Mark IV notified Plaintiff soon after Plaintiff filed its complaint to inform Plaintiff that Gulton was the true party in interest, and when Plaintiff insisted on proof, Mark IV provided a Vice President for deposition to show that Mark IV had nothing to do with light fixtures. Mark IV insists that Plaintiff ignored the clear evidence and continued actively to pursue discovery by filing nine motions, resulting in the imposition on Mark IV of an expenditure for attorneys' fees in excess of $200,000.

Finally, in support of its argument, Mark IV offers this Court's December 21, 1990 order granting summary judgment for Mark IV and granting Plaintiff's motion to amend its complaint to name Gulton. In that Order, the Court found that there was no evidence that Mark IV could have infringed Plaintiff's patent.

### 2. Sanctions and Attorneys' Fees are Inappropriate.

The Court refuses to sanction Plaintiff or find that this is an exceptional case warranting the payment of attorneys' fees, because it was not clear when Plaintiff filed its complaint against Mark IV that it had *no* basis for naming Mark IV as the Defendant, and Mark IV has failed to present sufficient evidence that Plaintiff's inquiry was unreasonable.

## E. PLAINTIFF'S MOTION FOR AN ORDER IN LIMINE TO: (1) EXCLUDE EXPERT WITNESSES; (2) LIMIT EXPERT WITNESS TESTIMONY; AND (3) EXCLUDE DECLARATIONS IN THE RECORD.

Plaintiff requests that the Court issue an order: (1) that Defendant's expert witnesses at trial will be limited to Martin Adelman, Joseph McDermott, Gerald Irion, and Aron Levko; (2) that with respect to Mr. McDermott and Mr. Irion, the subject matter on which they will testify will be limited to that submitted in their declarations filed in support of Defendant's motion on validity; and (3) excluding the declarations of Mr. Spencer, Mr. Goldsworthy, and Mr. Pehlke from consideration in the summary judgment proceedings.

### 1. Plaintiff's Argument in Support of its Motion.

Plaintiff argues that it requested Defendant to supplement its answer to interrogatory No. 15A, which sought to find out about what each expert listed on Defendant's final expert witness list would testify. By a May 14, 1991 stipulated order, the parties were to

---

7. 35 U.S.C. 285 provides that a court in its discretion may award attorneys' fees to the pre- vailing party in exceptional cases.

exchange final witness lists by June 3, 1991. Defendant's expert witness list includes: Gerald W. Irion, Wallace R. Aikens, Richard Robertson, Robert D. Pehlke, R.A.P. Spencer, Robert D. Sweet, Jr., Joseph S. McDermott, H. Wayne Lyons, Aron Levko, Dr. Howard L. Price, and Martin Adelman. On August 16, 1991 Defendant attempted to add Mr. W. Brandt Goldsworthy to the list, but in a telephone status conference the Court refused to permit Defendant to add Mr. Goldsworthy to the witness list or to permit him to testify at trial. Plaintiff makes numerous convoluted arguments regarding its motion. First, Plaintiff argues that Defendant's failure to respond fully to interrogatory 15A concealed the positions of the undisclosed experts and shielded them from deposition. Thus, since only Mr. Adelman and Mr. Levko were mentioned in the answer to 15A, Plaintiff could not depose the other experts. Plaintiff relies on Rule 26(b)(4)(A), which provides that a party may through interrogatories require another party to identify which experts it expects to call and to state the subject matter, facts, and opinions to which he is expected to testify. The rule also provides that *"upon motion, the court may order further discovery by other means ..."* Fed.R.Civ.P. 26(b)(4)(A). Thus, Plaintiff argues that because Defendant failed to answer 15A with respect to most of its experts, Plaintiff was deprived of the opportunity to make a motion to depose these experts.

Plaintiff argues that the fact that it actually deposed Mr. Spencer, Mr. McDermott, Mr. Aikens, Mr. Irion, and Mr. Lyons does not detract from its argument because it deposed those experts pursuant to Fed. R.Civ.P. 56(e), not on the basis of Defendant's response to interrogatory 15A.

Next, Plaintiff argues that Defendant should not be able to rely on the declarations of Mr. Spencer, Mr. Goldsworthy, and Mr. Pehlke in this summary judgment proceeding, because they cannot testify at trial and the testimony of witnesses who cannot testify at trial fails to meet the "admissible in evidence" standard of Fed.R.Civ.P. 56(e). *See Geiserman v. MacDonald,* 893 F.2d 787, 792–93 (5th Cir.1990) (affirming lower court's de-

cision to enforce its local rules and not consider expert testimony in a summary judgment proceeding because the party failed to list the expert and thus the expert would not be able to testify at trial).

Plaintiff argues that Mr. Spencer and Mr. Goldsworthy cannot testify at trial because Defendant failed to list them it its final expert witness list. Plaintiff argues that Mr. Pehlke cannot testify at trial even though he is listed on the expert witness list, because Defendant's failed to list him in Defendant's answer to interrogatory 15A and, thus, Plaintiff was precluded from taking his deposition.

## 2. Defendant's Arguments in Opposition to the Motion.

Defendant argues that it explicitly answered 15A and, in addition, the substance of the interrogatory was given to Plaintiff through deposition, declarations, and briefs opposing Plaintiff's various motions.[8]

With respect to Mr. Pehlke, Defendant points out that in addition to Mr. Pehlke being on the expert witness list and fact witness list, on September 14, 1991, Defendant served Plaintiff with a supplement to interrogatory answer 15A identifying Professor Pehlke, describing his qualifications, and identifying the facts and documents upon which his opinion is based.

Defendant also notes that pursuant to a March 28, 1991 stipulated order regarding the deposition of experts, Plaintiff could have taken the deposition of any expert even after the close of discovery, as it did with numerous experts.

Defendant attempts to distinguish the *Geiserman* case by arguing that in that case, the court evaluated the exclusion of evidence under four factors: (1) the explanation of the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman,* 893 F.2d at 791. Pursuant to this test, Defendant submits that Mr. Pehlke was identified, his testimony is

---

**8.** Defendant also filed an additional supplement to its answer to interrogatory 15A with its instant brief.

important, and there is no prejudice because Plaintiff knew he was on the list and now knows everything he will testify to in light of the numerous briefs.

Defendants urge the Court not to limit the testimony of Mr. McDermott and Mr. Irion to their declarations, because Plaintiff deposed these witnesses.[9]

Finally, Defendant argues that the Court should not exclude Mr. Spencer and Mr. Goldsworthy's declarations from consideration in the summary judgment motions, because although they will not testify at trial, the evidence they offer is admissible through other experts. In other words, Rule 56(e) does not require that a party only use the affidavits of people who will testify at trial, as long as the affidavits offer admissible evidence.

### 3. Analysis.
#### a. Motion to limit the experts at trial.

The Court denies the motion that seeks to limit the experts at trial to Mr. Adelman, Mr. McDermott, Mr. Irion, and Mr. Levko, because Plaintiff had ample opportunity to depose the other known experts and now knows the substance of their testimony anyway.

#### b. Motion to limit the subject matter about which experts will testify.

The Court denies the motion that seeks to limit the subject matter about which Mr. McDermott and Mr. Irion will testify, because, as mentioned above, Plaintiff deposed these witnesses and now knows the substance of their testimony. However, as noted at the hearing, the Court will limit the subject matter if Plaintiff can demonstrate that the subject matter is beyond the witness' area of expertise.

#### c. Motion to exclude declarations.

■ The Court grants the motion to exclude Mr. Goldsworthy's declaration from consideration in the summary judgment proceedings, because he was not listed as an expert witness. However, the Court denies the motion to exclude the declarations of Mr. Pehlke and Mr. Spencer from consideration, because Plaintiff deposed both of these experts and Defendant listed both on its expert

witness list. The Court is not persuaded that it should exclude Mr. Spencer's declaration merely because Defendant has chosen not to call Mr. Spencer as a witness during trial.

### F. CROSS–MOTIONS FOR SUMMARY JUDGMENT ON THE VALIDITY OF CLAIM 1 OF PATENT–IN–SUIT.

■ The Patent Act of 1952 sets forth the requirements of patentability. The Act states in part:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been *obvious* at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103 (emphasis added). It is well-established that "obviousness" is a conclusion of law properly determined by the Court. *See Gillette Co. v. S.C. Johnson & Son, Inc.,* 919 F.2d 720, 723 (Fed.Cir.1990).

■ In addition, the act provides for a presumption of patentability with the onus on the party opposing patentability to show by clear and convincing evidence that the invention is not patentable. 35 U.S.C. § 282.

In *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the Supreme Court set forth the test for determining "obviousness:"

While the ultimate question of patent validity is one of law ..., the § 103 condition ... lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might

---

9. Defendant also offers testimony from the deposition of an expert where Plaintiff's counsel, Mr. Perry, recognized that the witness' statement

would be a substitute for a written answer to 15A.

be utilized to give light to the circumstances surrounding the origin of the subject matters sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Id.* (citations omitted).

### 1. Defendant's Argument That Patent Is Invalid.

Defendant maintains that the patent is invalid because it would have been obvious to a person having ordinary skill and that the instant invention merely incorporates prior existing art. Specifically, Defendant argues that the instant fixture is an obvious outgrowth of the Arenberg [10] and Kalt [11] lighting fixtures and the numerous publications regarding the benefits of pultrusion. Defendant supports this proposition with the affidavits of seven experts.

Defendant insists that the only difference between the prior lighting fixtures and the instant one is the material used to make the invention. While the material used in the prior inventions was metal, the instant invention is made out of a pultrusion from resin and glass fiber, and the mere substitution of one material for another in a known structure does not confer patentability. *See Hotchkiss v. Greenwood,* 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1851); *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966).

Defendant also disputes Plaintiff's argument that the instant fixture is different because it is a single-piece. Defendant argues that although the patent claim says the word "unitary," the Court should give the word its ordinary and accustomed meaning. *See Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 759 (Fed.Cir.1984). Defendant insists that merely because the prior art was made of joined separate parts does not make them non-unitary—just as a table having separate leg pieces joined at the top does not make the table non-unitary. Defendant claims that the word "unitary" is broad enough to cover multi-piece unitary structures.

Defendant also argues that the fact that the PTO found claim 1 to be patentable is of no consequence because the proceeding was ex-parte and Defendant had no opportunity to demonstrate that Plaintiff mislead the PTO. Defendant focuses on the PTO's initial denial of the patent, the decision to reexamine, and the interlocutory PTO decision that claim 1 was unpatentable. Specifically, Defendant argues that Plaintiff mislead the PTO into thinking that the claim required a "one-piece" member instead of merely a "unitary" member.

Finally, Defendant argues that the PTO's final decision upholding the patentability of the instant fixture does not change the burden in this lawsuit, and the Court should merely presume the patent to be valid like in any other case and should not give added weight to patentability because the PTO found the instant fixture patentable upon reexamination. *See In re Etter,* 756 F.2d 852 (Fed.Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

### 2. Plaintiff's Argument that the Patent is Valid.

Plaintiff argues that claim 1 of its patent is valid not because its invention is made of a different material, but because its invention has a trim panel and light housing made of one piece instead of two. In other words, although Plaintiff admits that front-lighted fixtures with a card-holding means joined to part of a light enclosure existed in the prior art, the instant fixture is different because, as the patent claim says, it is "unitary"—made of one piece.

Plaintiff argues that Defendant's case is based on improper hindsight analysis, and Plaintiff relies on the Federal Circuit's holding that "[t]he obviousness standard ... requires the decision maker to return to the time the invention was made." *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1050 (Fed.Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

Next, Plaintiff argues that the testimony of Defendant's experts demonstrates the non-obviousness of the Domas invention. If the invention was so obvious, Defendant's experts would have developed it long ago. Moreover, Plaintiff details how each of Defendant's experts' testimony is inadequate pursuant to Fed.R.Civ.P. 56(e), which re-

---

**10.** The Arenberg fixture is Patent No. 2,587,807.

**11.** The Kalt fixture is Patent No. 3,035,161.

quires that affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify about matters stated therein.

Moreover, Plaintiff insists that the Court should consider the secondary evidence of non-obviousness. As authority for this proposition, Plaintiff cites *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed.Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 395, 102 L.Ed.2d 383 (1988) and *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). According to Plaintiff, the following considerations of the invention support a finding of non-obviousness: commercial success, long-standing problem or need, skepticism of experts, unexpected results, trials and failures of others, copying, and industry recognition.

Plaintiff also urges the Court to rely on the PTO's reexamination, which found the fixture patentable. Plaintiff points out that the PTO merely had to find the fixture unpatentable by a preponderance of the evidence to deny patentability. In the instant action, however, Defendant must prove by a clear and convincing standard that the fixture is not patentable. Thus, since the PTO did not find the fixture unpatentable under the lower standard, the Court should not find it unpatentable under the more rigorous standard.

Plaintiff also insists that Defendant has a much higher burden in light of the PTO's finding, because during the reexamination process, a patent does not even enjoy the presumption of validity that it enjoys here. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed.Cir.1988). In addition, Defendant's burden is even harder to achieve now that the PTO has considered the same prior art on which Defendant relies:

[T]he claims of [the patent-in-suit] are entitled to a presumption of validity, and [the

patent challenger] faces the burden of showing, by clear and convincing evidence, the invalidity of the claims. This burden is *especially difficult* when the prior art was before the PTO Examiner during prosecution of the application.

(citations omitted) (emphasis added). *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464 (Fed.Cir.1990).

Plaintiff also notes the contradiction between Defendant's argument in its motion for stay pending reexamination by the PTO and its argument now. Before, Defendant urged the Court to defer to the PTO. Defendant argued: the PTO is the "most expert;" the Court should "refer patent validity questions to the expertise of the patent office;" "the trier of fact would be benefitted by the consideration and expert opinion of the PTO;" and "it would be far more economical of judicial time and expense to the parties to permit the PTO to resolve that substantial question [of patentability] ..." Now, Defendant argues that the Court should disregard the PTO's finding because it was mistaken.

### 3. Whereas Defendant has Failed to Meet Its Burden of Showing Unpatentability by Clear and Convincing Evidence, Plaintiff Has Met Its Burden of Showing Patentability.

■ The Court grants summary judgment in favor of patentability since Defendant failed to demonstrate that there is a material issue of fact with respect to this issue. In particular, Defendant has completely failed to show that it will be able to offer evidence that the Domas invention is unpatentable by clear and convincing evidence.

Moreover, although the Court realizes that the PTO's finding upon reexamination that the fixture is patentable does not end the instant inquiry [12], the Court cannot help but note that since the patent office considered the same prior art and still found that inval-

---

12. The Court notes that Defendant's argument that the PTO found the patent valid because the reexamination proceeding is an ex-parte process is unpersuasive. Defendant filed the petition asking the PTO to reexamine the instant patent, and Defendant also had the opportunity to file a reply to the patent owner's statement. Surely,

Defendant is correct that Plaintiff had the opportunity to make further arguments, but that is no different than the benefit a party receives when it files a motion—it gets the last word through a reply brief. The Court is not convinced that through its reply Plaintiff was able to mislead the

idity did not exist by a preponderance of the evidence, Defendant has a sizeable burden in showing that the fixture is unpatentable by clear and convincing evidence.

■ The Federal Circuit has recognized that courts should defer to the expertise of the PTO when the PTO has examined the same prior art raised in support of an invalidity claim:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed.Cir.) (emphasis added), cert. denied, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The Court will especially give deference to the PTO's patentability decision in this case because the PTO found the Domas invention patentable twice—initially and upon reexamination.[13]

After taking into account (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art, the Court finds that Defendant has failed to show by clear and convincing evidence that the fixture was "obvious" and,

therefore, the Court finds it patentable. In addition, the Court notes that the secondary considerations, especially the failure of others and commercial success support a finding of nonobviousness.

**a. Scope and content of the prior art.**

Defendant asks the Court to examine the following prior art: the Arenberg and Kalt front-lighted fixtures, and the numerous publications on the benefits of pultrusion.[14]

On March 4, 1952 the PTO issued Patent No. 2,587,807 to an invention by Albert Arenberg and Edward Zimmerman entitled "Car Lighting Structure" ("the Arenberg fixture"). The invention is a front-lighted fixture that illuminates advertising cards and the interior of transit vehicles. The Arenberg invention is made of numerous pieces. The fixture is composed of an upper sheet metal housing member and a translucent lighting panel hinged to the sheet metal housing member. In addition, the invention proposes alternative arrangements of the fixtures to change the lighting display.

On May 15, 1962, the PTO issued Patent No. 3,035,161 to an invention by Gilbert Kalt called "Vehicle Ceiling with Lighting Fixture" ("Kalt fixture"). Like the Arenberg invention, the Kalt invention also is a front-lighted multi-piece metal fixture. In addition, the Kalt fixture also provides for structural support for the ceiling of the transit vehicles.

Finally, the numerous pultrusion publications describe the benefits of pultrusion.[15] These articles discuss the advantages of pul-

experts in the PTO into finding the instant fixture patentable.

Furthermore, at the time this Court granted Defendant's request to stay the instant litigation pending the PTO's reexamination of the validity of the patent-in-suit, it informed both counsel that just as a finding of unpatentability by the PTO would end the litigation, the Court would be inclined to give great weight to a PTO finding of patentability upon reexamination.

13. Although examiner Walsh did not reference the Arenberg and Kalt inventions when he ruled on the patentability of the continuing application, these inventions were referenced in examiner Hayes' denial of the parent application. Thus, the Court is confident that the PTO examined all of the prior art before it decided to grant the instant patent. Moreover, the PTO explicitly referenced the same prior art upon which Defen-

dant relies when the PTO found the invention patentable upon reexamination.

14. Defendant also mentions several back-lighted fixtures that the Court recognizes as prior art. However, as those fixtures are significantly different than the instant fixture both in terms of their lighting the advertising cards from the back and in terms of their multi-piece structure, the Court declines to depict each fixture.

15. Defendant cites several writings, including Spencer, "Pultrusion of Glass Reinforced Polyester" (1976), Tickle, "Current Capabilities of Reinforced Plastic Pultrusion" (1973), Tickle, "Pultrusions Step Up the Challenge to Structural Steels" (1977), and Wood, "Pultrusion is Poised for New Growth" (1976). U.S. Patent No. 4,252,696 ("McQuarrie patent") also provides a patent for a process by which the speed of pul-

trusion, including high strength, light weight, and corrosion resistance.

### b. Differences between the prior art and the claims at issue.

The central difference between the instant fixture and the fixtures in the prior art is the single-piece design. The Court reads the instant claim as calling for a single-piece fixture and, thus, the instant fixture is different and not obvious from the prior art. *See Indecor, Inc. v. Fox–Wells & Co.,* 642 F.Supp. 1473, 1489 (S.D.N.Y.1986) (upholding validity of a hospital curtain that was "formed integrally" instead of in two pieces as were prior art curtains).

As noted *infra* note 2, claim 1 calls for "[a] cornice lighting fixture for public transit vehicles, the lighting fixture comprising: *a unitary member made as a pultrusion* from resin and glass fibers ..." While it is possible for a multi-piece invention to be unitary once the multiple pieces are fabricated together, the instant claim calls for the fixture to be "made as a pultrusion"—signifying that the invention is a single-piece design. As both parties have described the pultrusion process and as the pultrusion publications confirm, pultrusions are characterized by having been pulled through a pultrusion die so as to have an indeterminate length of uniform cross-section. Nowhere does the claim state that the fixture is to be made from "some," "many," or "multiple" pultrusions. Instead, the claim calls for "a" pultrusion and therefore calls for a single-piece unitary member.

The PTO also found that the instant fixture differed from the prior art in that the patent-in-suit calls for a fixture made of a single-piece. On reexamination the PTO upheld the patentability of claim 1, but modified claim 2. Claim 2 only differed from claim 1 in one respect, it did not call for the unitary member to be made from a pultrusion.

Before modified, claim 2 read: "A cornice lighting fixture for public transit vehicles, the lighting fixture comprising: a unitary member of an elongated shape having a uniform cross-section along the length thereof ..." Claim 1 only differs in that following the words "unitary member" it describes what kind of unitary member—a unitary member *"made as a pultrusion* from resin and glass fibers ..." The patent office deemed claim 2 unpatentable as presented and only upheld its patentability after modifying it. The PTO's modification consisted of clarifying what type of unitary member the claim called for. The modification involve adding the words "single-piece" before the words "unitary member." [16]

Thus, the PTO added the words "single-piece" because it felt that the original claim 2 failed adequately to call for a single-piece fixture. In contrast, the PTO was satisfied that claim 1 is patentable even though its sole difference is the words describing that the unitary member is "made as *a* pultrusion." Evidently, the PTO was also convinced that the added words in claim 1 clearly call for a single-piece fixture, otherwise, the PTO would also have suggested modifying claim 1 by adding the words "single-piece."

Just as in *Indecor, Inc.,* by making the single-piece design, Mr. Domas accomplished more than making out of one piece what had previously been made out of two pieces. *See Indecor, Inc.,* 642 F.Supp. at 1489. Rather, Mr. Domas' invention provides for easier installation and is designed to avoid the costly and time-consuming manufacturing operations involved when separate pieces must be fabricated together. *Id.*

The Court also notes that besides the single-piece/multiple-piece difference, the instant fixture differs from the prior art in other respects. For example, it differs from Arenberg in that Arenberg does not refer to a self-contained unit that, in addition to enclosing, supporting, and connecting a light tube, includes a panel for supporting an advertising card.[17] It also differs from Kalt,

---

trusion can be increased and the quality enhanced.

---

16. The PTO modified claim 2 in two other minor respects—it changed two indefinite articles to definite articles.

17. In its Notice of Intent to Issue Reexamination Certificate, the PTO noted another difference between the instant fixture and Arenberg:

 [I]f the fixture of Arenberg *et al* were made to be a single-piece it would lose the taught advantage of allowing the lights to be located

because whereas the Kalt fixture is concerned with providing strength and structural integrity to the vehicle ceiling, the structure of a vehicle's ceiling is of no concern to the instant fixture.[18]

### c. The level of ordinary skill.

In assessing whether the instant fixture is obvious, both parties agree that the Court should consider whether a person with five years of drafting and design experience would have thought the instant fixture obvious from the prior art.

### d. Secondary evidence of obviousness.

Although the Court finds sufficient evidence of "non-obviousness" in the above-mentioned criteria, the Court notes that the secondary evidence, particularly the failure of others to invent this supposedly "obvious" fixture and its commercial success, support a finding of non-obviousness.

The Court need look no farther than Defendant's own expert, Mr. Wallace R. Aikens, the Vice President of Aircraft Product Sales and Development at Luminator, to find failed efforts to invent this supposedly "obvious" invention. At his deposition, Mr. Aikens testified that around 1980 he designed an extruded plastic fixture that never went into production because Mr. Aikens thought it was flimsy and lacked structural integrity. Deposition of Mr. Aikens at 13–14. In addition, Mr. Aikens designed an aluminum extrusion fixture that never went into production. *Id.* at 14–15. These two examples alone demonstrate that other designers failed to invent this supposedly "obvious" fixture.

Moreover, the commercial success of the Domas invention supports a finding of non-obviousness. The record indicates that upon

completion, the instant invention was accepted by General Motors Corporation. In addition, from 1980 until Defendant entered the market, the instant patent represented 90% of the total sales of front-lighted card carrying fixtures for busses.[19] Also, in the period between January, 1986 and March, 1991, Plaintiff's sales of the patented device were in excess of $28.4 million. Lastly, the invention received recognition from the plastics industry when the Society of Plastics Industry awarded the invention the Counterpoise Award in 1986.

Thus, the Court finds that Defendant has failed to establish that clear and convincing evidence supports Defendant's contention that the instant fixture is unpatentable. Also, Defendant has failed to overcome the presumption of patentability and the deference that is due to the experts in the PTO. Rather, the Court finds that Plaintiff has met its burden of demonstrating that there is no material issue of fact disputing the patentability of the instant fixture. Therefore, the Court grants Plaintiff's motion for partial summary judgment striking Defendant's affirmative defense of invalidity and denies Defendant's motion.

## G. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON INFRINGEMENT.*

 Plaintiff moves for summary judgment on the issue of infringement.[20] There are two types of infringement: literal and equivalent. A holding of literal infringement requires that the accused device embody every element of the patent claim. In other words, every element of the patent

---

along the vehicle in various arrangements as desired.

Notice of Intent to Issue Reexamination Certificate, 9/16/92.

**18.** The PTO also noted this difference. It stated:

... Claim 1 is confirmed as being patentable and claim 2 as amended is patentable since, as argued by the patent owner, to modify the fixture of Kalt to make it a single-piece member would destroy the teaching of the reference in that the card holder would no longer be easily removable since the card holder would then be an integral part of the vehicle support system since the light fixture also acts as a

longitudinal support beam. Similarly, if the card holder were to continue to be removable (by allowing for the removal of the entire fixture) the structural integrity of the vehicle would then be compromised.

Notice of Intent to Issue Reexamination Certificate, 9/16/92.

**19.** Since Defendant has entered the market, it has captured 25% of Plaintiff's market share.

**20.** In Defendant's response to said motion, Defendant asks the Court to make a finding of non-infringement as a matter of law. Thus, the Court examines the infringement issue as if the parties filed cross-motions for summary judgment.

claim must "read on," or precisely describe, the accused product. *Stewart–Warner Corp. v. City of Pontiac, Michigan,* 767 F.2d 1563, 1570 (Fed.Cir.1985). Under the doctrine of equivalence, an accused device infringes a claim if it "performs substantially the same function in substantially the same way to obtain the same result." *Id.*

 Under either theory, the plaintiff has the burden of proving infringement by a preponderance of the evidence. *See Mannesmann Demag Corp. v. Engineered Metal Products Co.,* 793 F.2d 1279, 1282 (Fed.Cir. 1986). Where a defendant proves that its devices are built wholly according to the teachings of the prior art, a court should not find infringement. *See, e.g., Casco Products Corp. v. Sinko Tool & Mfg. Co.,* 116 F.2d 119, 121 (7th Cir.1940), *cert. denied,* 312 U.S. 693, 61 S.Ct. 713, 85 L.Ed. 1129 (1941) (if the construction was taught by prior art then the mere fact that the device read on the claims of the patent does not spell infringement).

### 1. Literal Infringement.

Claim 1 of the instant patent is reprinted *infra* at note 2.

 A two-step analysis is required for determining patent infringement:

Analysis of patent infringement involves two inquiries: determination of the scope of the claims, if there is a dispute as to claims interpretation or construction; followed by the determination of whether properly interpreted claims encompass the accused structure. The threshold question of claim interpretation is, on appeal, reviewed for legal correctness. The application of the claim to the accused structure is a matter of fact, reviewed for clear error.

*Mannesmann,* 793 F.2d at 1282. Thus, the first step, claim interpretation, is a matter of law, and the second step, application of the properly interpreted claim to the accused device, is a question of fact. *SRI International v. Matsushita Electric Corp.,* 775 F.2d 1107, 1118 (Fed.Cir.1985); *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 758 (Fed. Cir.1984).

### a. Defendant's argument that there is no literal infringement.

Defendant has offered the affidavit of Gerald W. Irion, the Director of Engineering and Program management of Varo Inc. and the former Vice–President of Engineering at Luminator Division of Gulton Industries. His declaration points out specific limitations of the patent claim which do not apply to Defendant's fixture.

Defendant argues that its product does not have a unitary member "of elongated shape with a uniform cross-section along the length thereof." Defendant insists that its fixture has differing cross-sections at different points in its length.

Defendant also argues that its product does not have "a light housing that defines one longitudinal margin of the fixture." Defendant points out that its product does not have a housing in the sense of complete enclosure around the light tube. Instead, the complete enclosure in its product is formed by the lens combined with a portion of the pultrusion.

Further, in the Luminator construction, the channel recess does not form the "longitudinal margin" of the fixture. Rather, Defendant's design has an extra panel which serves to mount the fixture at one edge to the ceiling. In contrast, the instant patent calls for the fixture to be mounted to the ceiling by screws holding the horizontal wall to the ceiling, without any additional panel.

Defendant also relies on the findings of the PTO. However, instead of citing the final PTO determination, Defendant cites to the PTO's initial finding upon reexamination that the instant fixture was not patentable in light of the prior art of the Kalt and Arenberg inventions and in view of the Wood publication. Defendant argues that the PTO contradicted itself and even if the final determination of patentability is correct, there is a genuine issue of fact as to whether Defendant's fixture is merely an obvious outgrowth of the Kalt invention.

### b. Plaintiff's argument that Defendant's product literally infringes the instant patent.

Plaintiff claims that Defendant's counsel admitted that Defendant's fixture literally in-

fringed the instant patent. Defendant's counsel sent a letter advising that the design of a product substantially similar to Defendant's instant product infringed the instant patent: "As I told Gerald, if the prior art is disregarded, in my judgment claims 1 and 2 of the [instant] patent would be deemed infringed."

In addition, Plaintiff insists that Defendant's arguments that it did not infringe are too narrow. With respect to Defendant's argument that Defendant's product differs from Plaintiff's in that it has numerous cross-sections, Plaintiff argues that the argument leads to the absurd result of finding that the accused fixture has different cross-sections at each screw.

Likewise, Plaintiff argues that the Court should read "housing" broadly and, therefore, the housing of Defendant's product literally infringes Plaintiff's patent.

Plaintiff also relies on the PTO's finding to bolster its argument that Defendant infringed. Plaintiff argues that the patent examiner implied that Defendant infringed because the examiner stated,

> Specifically with regards to the commercial success of the device and the failure of the patent owner's competitors to make an acceptable competing device *without copying the patent owner's fixtures* ...

Notice of Intent to Issue Reexamination Certificate, 9/16/92 at 3–4 (emphasis added).

### c. There is no literal infringement as a matter of law.

Plaintiff has failed to show that it is able to prove by a preponderance of the evidence that Defendant literally infringed the patent-in-suit.

 The Court interprets claim 1 in light of the claim language, the prior art, the prosecution history, and the specification. *See SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1118 (Fed.Cir. 1985). Although the parties dispute the proper interpretation of "cross-section" and "housing," the Court need not reach the in-

terpretation of those words. Rather, the Court finds the phrase "a light housing that defines one longitudinal margin of the fixture" dispositive. The Court interprets this phrase pursuant to its plain language—some type of light fixture housing defines one of the outer edges of the fixture.[21]

In applying the interpreted claim to the accused fixture, the Court finds that Plaintiff is unable to show by a preponderance of the evidence that Defendant literally infringed the patent-in-suit. Rather, Defendant has demonstrated that there are sufficient differences between the patent-in-suit and the accused fixture to find that the accused device does not literally infringe the patent. Although merely adding elements to an accused device will not avoid infringement of the patent-in-suit, the Court finds that not every element of claim 1 of the patent-in-suit is found in Defendant's fixture. *See Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196 (Fed.Cir.1987).

Whereas the patent-in-suit has "a light housing that defines one longitudinal margin of the fixture," the accused fixture has an approximately three and one-half inch extension, or flange, that defines one longitudinal margin of the fixture. In other words, the light housing (regardless of whether the Court defines the term narrowly or broadly) on Defendant's fixture does not define one of its longitudinal margins. Thus, the accused fixture has a three and one-half to four inch extension of the trim panel that serves to attach it to the ceiling of a transit vehicle, and the Domas fixture, as described in claim 1, does not have such an extension. Since the patent-in-suit calls for the housing to define one longitudinal margin of the fixture, it is to be attached to the vehicle by the horizontal and vertical walls of the light housing, not by an extension.

At oral argument, Plaintiff asserted that in 1983 (six years before Defendant designed its fixture) Plaintiff designed the Domas fixture with an extension to affix the fixture to the transit vehicle. Plaintiff argues that an in-

---

21. The Court notes that it interprets claim 1 consistently with the interpretation undertaken in the discussion regarding validity. *See Intervet America, Inc. v. Kee–Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989). Therefore, since claim one describes a unitary fixture made from "a" pultrusion, as discussed above, the Court will construe this to mean a single-piece fixture.

ventor need only disclose a single embodiment of his invention to the PTO and, therefore, Plaintiff's minor variation of adding the extension is merely an improvement within the scope of claim 1.

 However, infringement is determined by comparing the accused product with the invention set forth in the claims of the patent, not the commercial embodiment of that patent. *See ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1578 (Fed.Cir.1984); 6 Lipscomb, *Walker on Patents* § 22:5 (3rd ed. 1987) ("Infringement depends not upon what is manufactured or sold by the patentee but upon what he has patented."). Thus, rather than analyzing whether the accused fixture resembles Plaintiff's most recent fixture, and then having to decide whether Plaintiff's most recent fixture is encompassed within the patent-in-suit, the Court need only examine the claim language of the patent-in-suit to decide whether the accused fixture embodies each and every element of that claim.

As noted above, in interpreting claim 1 of the patent-in-suit, the Court finds that it does not encompass a design like Defendant's, where an extension, not the light housing, defines one longitudinal margin of the fixture. The Court finds that the extension differentiates the accused fixture from the fixture described in claim 1 of the Domas patent.

Not only does the extension alter the way in which the fixture is affixed to the transit vehicle, but the extension also nullifies one of the purposes of the fixture described in claim 1. In the Domas fixture, the housing and trim panel formed an air duct for carrying heated or cooled air, but in the accused fixture, the extension alters the fixture in such a way that those portions of the fixture no longer form an air duct. In other words, rather than the extension serving as the margin or edge of the fixture to define the edge of the air duct above the fixture, the extension merely enlarges the air duct area.[22]

Thus, the Court finds that Defendant has proven absence of literal infringement as a matter of law.

---

22. The Court also notes that the shape of the lens on the accused fixture differs from that of the

## 2. Infringement By The Doctrine of Equivalence.

As noted above, a court may find infringement under the doctrine of equivalence if an accused product "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same result as the claimed invention." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). However, even if this test is met, "there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed.Cir.), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).

The *Wilson* court suggested that a court visualize a hypothetical patent claim, sufficient in scope to literally cover the accused product. Next, a court should engage in the following exercise:

> The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art. If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents.

*Id.* at 684. Importantly, the burden is on the plaintiff to prove that the range of equivalents it seeks does not ensnare prior art and that the hypothetical claim would be patentable.

### a. The parties arguments.

Plaintiff argues that Defendant admitted that its fixture is equivalent to Plaintiff's when it attempted to sell its product. Defendant told its customers that the Luminator fixture is a "fiberglass composite structure of form, fit and function equal to the [Transmatic] component."

Defendant argues that Plaintiff cannot meet its burden of showing that Defendant's

Domas fixture.

fixture performs substantially the same overall function, in substantially the same way, to obtain substantially the same result as the claimed invention.

**b. Material facts exist preventing summary judgment on infringement by equivalence.**

Unlike literal infringement, material facts exist preventing summary judgment on infringement by equivalence.

■ First, Plaintiff has not addressed Defendant's argument that Defendant's fixture merely represents prior art teachings. This deficiency is critical, since Defendant cannot be held to have infringed the patent-in-suit if Defendant's device represents prior art teachings.

Second, although the Court is convinced that the patent-in-suit and the accused fixture perform substantially the same overall function, Plaintiff has failed to demonstrate that they perform that function in substantially the same way and achieve substantially the same results. Rather, Defendant has presented sufficient evidence to withstand summary judgment. For example, Defendant has presented evidence establishing that its fixture is superior to the patent-in-suit, because its flange makes it easier to attach to the contours of busses, and the lighting angle of its fixture illuminates an advertising card and interior of a bus in a superior fashion.[23]

The Court notes, however, that Defendant's evidence is not so persuasive as to show the absence of any material fact. In other words, although Defendant has demonstrated the existence of factual disputes, it has failed to show that by no means will Plaintiff be able to prove by a preponderance of the evidence infringement by equivalence. Therefore, the Court finds that this issue is not ripe for summary disposition.

**H. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER (1) INFRINGEMENT WAS WILLFUL, (2) DAMAGES SHOULD BE INCREASED TO THREE TIMES THE AMOUNT, AND (3) THIS IS AN EXCEPTIONAL CASE ENTITLING PLAINTIFF TO ATTORNEYS' FEES.**

Plaintiff moves for summary judgment regarding willful infringement, increased damages, and attorneys' fees.[24]

**1. Willful Infringement.**

■ A finding of willful infringement is a factual question based on the totality of the circumstances. *Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed.Cir.1986), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). The Federal Circuit has enunciated the factors to be weighed in assessing whether an infringer's conduct is willful: (1) whether the infringer deliberately copied the ideas of another; (2) when he knew of the other's patent protection, whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation. *Id.* One with knowledge of another's patent rights has the duty to exercise due care to determine whether or not his conduct would result in an infringement. *Id.*

■ Plaintiff argues that Defendant's conduct was willful because even Defendant's counsel warned Defendant that the product would infringe Plaintiff's patent. Moreover, Plaintiff insists that an infringer's duty to exercise due care can only be established by relying on attorneys' opinions if the opinions meet the "four corners" test of *Underwater Devices, Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1390 (Fed.Cir.1983)[25], and Plain-

---

**23.** The Court is not persuaded that Defendant's statement while attempting to attract customers that its product was just like the patent-in-suit denotes an admission that Defendant infringed the patent-in-suit. Rather, the Court reads this declaration as nothing more than an attempt to woo customers.

**24.** The Court notes that any ruling on this motion would be premature, since there has not yet been a finding of infringement.

**25.** According to that court,

[Such opinions must contain] within [their] four corners a patent validity analysis, properly and explicitly predicated and a review of the file histories of the patents at issue, and the infringement analysis that, *inter alia,* compared and contrasted the potentially infringing method or apparatus with the patented inventions, the opinion may have contained sufficient indicia of credibility to remove any doubt

tiff insists that Mr. Relson's opinions did not meet that test.

Defendant maintains that it proceeded cautiously and acted in good faith. According to Defendant, it fist considered selling the lighting fixture in mid–1987 and the first accused products were not shipped until 1989. During that time, Defendant's counsel, Mr. Relson, gave six written opinions, all of which were based on a careful study of Plaintiff's patent.[26]

The Court finds that Plaintiff has failed to demonstrate that no material fact exists regarding willful infringement. The case history of the Domas fixture suggests that Defendant may have been permitted to rely on Mr. Relson's opinion regarding invalidity. The fact that the PTO originally denied the patent, reexamined the patent, and initially upon reexamination determined the fixture to be unpatentable supports the conclusion that this is a close case. Thus, Mr. Relson's opinions were competent and sufficient to support Defendant's belief that "a court *might* reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992) (emphasis added). As Defendant argues, that Mr. Relson's competent, reasonable opinion might turn out to be wrong or might not be accepted by a jury is irrelevant. *Id.*

Since the Court finds that Plaintiff has failed to carry its burden in demonstrating that there is no material factual dispute regarding Defendant's willful infringement, the Court denies Plaintiff's motion.

### 2. Increased Damages.

█ Even when a finding of willful infringement is made, whether to award increased damages is in the Court's discretion. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991); *Ernster v. Ralston Purina Co.*, 757 F.Supp. 1030 (E.D.Mo.1991) (choosing not to award increased damages

that [the defendant] in fact received a competent opinion. *Id.* at 1390.

26. Mr. Relson opined that Plaintiff's patent would be deemed unpatentable and, therefore,

because it found no evidence of bad faith or unconscionable conduct).

The Court finds that Plaintiff has failed to carry its burden of demonstrating that there is no material factual dispute regarding Defendant's willful and bad faith infringement and, therefore, the Court denies Plaintiff's motion for increased damages.

### 3. Exceptional Case Warranting Attorneys' Fees.

Section 285 of title 35 authorizes a trial court in a patent infringement action to "award reasonable attorney fees to the prevailing party" in "exceptional circumstances." 35 U.S.C. § 285. A case is rendered exceptional by either "willful infringement or by bad faith behavior displayed during the course of the litigation." *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1580 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

The Court notes that besides the fact that Plaintiff has not yet been determined to be the prevailing party, as noted above, Plaintiff has failed to carry its burden in demonstrating that there is no material factual dispute regarding Defendant's willful and bad faith infringement and, therefore, the Court denies Plaintiff's motion for attorneys' fees.

### I. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS DEFENDANT'S AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT.*

In paragraph 11(b) of its answer to the amended complaint, Defendant raised the affirmative defense of inequitable conduct. Specifically, Defendant argues that the patent is not enforceable because:

> [W]ith full knowledge of prior art patents [the Arenberg and Kalt fixtures] on the basis of which a previous examiner rejected claims to the alleged invention, which prior art patents were and are and were

Defendant's fixture would not infringe. Moreover, Mr. Relson suggested some modifications in order not to infringe Plaintiff's patent even if it was upheld as patentable.

known to be relevant and material to the patentability of the alleged invention, the applicant for patent and his attorney failed to call the attention of the examiner handling the application for the patent in suit to such prior art, thereby misleading and deceiving the examiner into allowing the application and granting the patent in suit, and failing to meet the duty of full disclosure and the duty of candor and good fair required of all applicants for patent and their attorneys.

Plaintiff moves for summary judgment to dismiss this affirmative defense.

 A patent is unenforceable if the patent owner used inequitable conduct in getting the PTO to approve the patent. *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). A determination of "inequitable conduct" requires a two-step analysis. The trial court must first determine if the alleged non-disclosure or false information has a threshold degree of materiality. *Id.* at 1559.

 The court then must determine whether there was an intent to deceive or gross negligence. *Id.* However, a finding of gross negligence, by itself, does not justify an inference of intent to deceive; "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Medical Consultants v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988). The defendant has the burden of proving both elements by a clear and convincing standard.

Once these thresholds are met, the court must balance the materiality with intent. The more material the omission, the less culpable the intent required, and vice versa. *N.V. Akzo v. E.I. Du Pont de Nemours & Co.*, 810 F.2d 1148, 1153 (Fed.Cir.1987).

### 1. Plaintiff's Arguments In Favor of Summary Judgment.

Plaintiff argues that there is insufficient evidence of intent to deceive and, therefore, the Court should dismiss the affirmative defense. Plaintiff offers the declaration of James A. Kushman, the attorney who made the application for the instant patent. In his declaration, Mr. Kushman claims that he never intended to deceive the PTO. In fact, Mr. Kushman argues that he referenced each document in the continuing application with the parent application's number and, therefore, the PTO could easily have referenced the reasons why the parent application was deemed unpatentable (i.e., because of the Kalt and Arenberg inventions).

Moreover, Plaintiff argues that this case is akin to *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed.Cir. 1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). In that case, the court arguably attempted to stem the flow of inequitable conduct allegations and thus denied the defense even though the patent issued from a continuation application that was filed while an appeal of rejected claims in the parent application was pending.

### 2. Defendant's Arguments Against Summary Judgment.

Defendant argues that the Court should not grant summary judgment against its affirmative defense, because Plaintiff has failed to show that there are no material facts regarding Mr. Kushman's intent to deceive the PTO. Defendant raises numerous examples of factual mischaracterizations and omissions by Mr. Kushman that allegedly bare on his intent to deceive the PTO.

First, Defendant claims that Mr. Kushman made misrepresentations in the prosecution of the parent and continuing applications when he argued that the then pending claims were all limited to pultrusions made from resin and glass fibers.

Second, Defendant argues that Mr. Kushman filed the continuing application merely to assure that the application would be assigned to an examiner besides Mr. Hayes, the examiner who found the parent application unpatentable. Defendant insists that Mr. Kushman did this by filing a "method claim," which merely added that the pultrusion process would be used. Along with this claim, Mr. Kushman filed the same claims that had been previously rejected by examiner Hayes.

**1072**

Third, Defendant argues that Mr. Kushman withheld prior art from Mr. Walsh, the examiner of the continuing application. Initially, examiner Walsh rejected the continuing application as unpatentable because of other inventions like the Schwenkler, Finger, and Biefeld inventions (all back-lighting fixtures). Examiner Hayes had also mentioned these prior inventions when he rejected the parent application. However, according to Defendant, Mr. Kushman convinced examiner Walsh that modifying the claim to include a "light housing opening towards the direction in which light is to be provided" would "overcome the teaching of Schwenkler." In other words, Mr. Kushman convinced the PTO that the instant patent was different than the other inventions because the other inventions all provided back lighting to the advertisements, while the instant fixture would provide front lighting. This statement allegedly evidenced an intent to deceive because it failed to mention that the Arenberg and Kalt inventions on which examiner Hayes partly relied also provided for front lighting and, thus, Mr. Kushman's clarification failed to distinguish all the relevant inventions.

**3. Plaintiff has Failed to Show the Absence of Any Material Fact.**

■ Plaintiff has failed to convince the Court there is no dispute as to any material fact regarding Mr. Kushman's intent. First, the Court finds that the alleged misrepresentations and omissions reflect material information.[27] Second, Defendant has submitted sufficient evidence to withstand Plaintiff's motion, since a fact-finder could infer through circumstantial evidence that Mr. Kushman intended to deceive the PTO.[28] The fact-finder will have to make a credibility determination to ascertain, for example, whether Mr. Kushman's failure to distinguish the Arenberg and Kalt front lighting inventions suggests that he intended to deceive the PTO or whether he chose not to mention them because they were already referenced in the parent application.

27. The Court notes that in its order granting reexamination, the PTO stated that the Arenberg and Kalt patent documents are "clearly material" to the examination of the claims of the instant patent.

## IV. CONCLUSION

In view of the above findings, the following issues, and only the following issues, remain to be litigated: (1) whether Defendant infringed the patent-in-suit under the doctrine of equivalence; (2) if Defendant infringed the patent-in-suit, whether it did so wilfully; (3) if Defendant infringed the patent-in-suit, whether Plaintiff is entitled to increased damages; (4) whether this is an exceptional case entitling either party to attorneys' fees; and (5) whether inequitable conduct renders the patent-in-suit unenforceable. For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED that Plaintiff's motion to lift the stay be GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to review the Magistrate Judge's decision regarding Defendant's motion to compel admissions and interrogatories be DENIED.

IT IS FURTHER ORDERED that Dismissed–Defendant Mark IV's motion for sanctions and attorney's fees be DENIED. .

IT IS FURTHER ORDERED that Plaintiff's motion for order in limine to exclude expert witnesses, limit expert witness testimony, and exclude declarations in the record be GRANTED only to the extent of excluding Mr. Goldsworthy's declaration from consideration in the summary judgment proceedings.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment on the validity of claim 1 of the patent-in-suit be GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on the validity of claim 1 be DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment of infringement be DENIED.

28. That the Court previously found the patent-in-suit valid in no way precludes a finding of inequitable conduct. See Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1213 (Fed.Cir.1987).

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment of non-infringement be GRANTED only as to literal infringement.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment on whether the infringement was willful, whether damages should be increased to three times the amount, and whether this is an exceptional case entitling Plaintiff to attorney fees, be DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment to dismiss Defendant's affirmative defense of inequitable conduct be DENIED.

