Bonnie **FUCHS**, Plaintiff–Appellant,

v.

**LIFETIME DOORS, INC.,**
Defendant–Appellee.

No. 90–8267.

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1991.

Bill R. Jones, Edward L. Friedman, Hilton Hatchett Howell, Jr., Liddell, Sapp, Zivley, Hill & Labeon, Houston, Tex., for plaintiff-appellant.

Frederick D. Bostwick, III, Naman, Howell, Smith & Lee, Waco, Tex., Allen Butler, David A. Scott, William L. Keller, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for defendant-appellee.

Before REYNALDO G. GARZA, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Bonnie Fuchs sued her former employer, Lifetime Doors, Inc., for firing her in violation of the Texas Juror Reemployment Statute (TJRS), Tex.Civ.Prac. & Rem.Code. §§ 122.001–122.002. She sought punitive damages in excess of the damages limitation contained in the statute. Five days before trial, Fuchs sought to amend her complaint to add two more claims arising from her termination by Lifetime. The district court refused to allow the amendment, applied the statutory limitation, and awarded Fuchs $4,940 in damages and $10,000 in attorney's fees. On appeal, we affirm as modified and remand for calculation of prejudgment interest.

Fuchs worked as a secretary for Lifetime. On March 22, 1988, Fuchs was selected as a juror in Robertson County, Texas, and served on a jury for six working days. On March 25, Lifetime informed her that she was fired effective immediately. Fuchs brought suit in state court, and the action was removed to the United States District Court for the Western District of Texas. For purposes of the summary judgment motion, Lifetime conceded that Fuchs was fired for serving as a juror, in violation of the TJRS, and that she suffered actual damages of at least $4,940, the maximum amount to which she was entitled under the district court's construction of the TJRS. Fuchs agrees that her actual damages are limited by the statute to six months' compensation, which in her case was $4,940. For some reason, Lifetime continued to provide Fuchs with medical insurance coverage from March 25, 1988, to the end of November 1989. During this time Fuchs' husband and daughter made numerous claims for medical benefits, which allegedly forced Lifetime to pay higher premiums to its group insurer. On January 17, 1990—about seven weeks after receiving notice that her coverage would be discontinued and only five days before trial—Fuchs

sought a continuance and leave to amend her complaint to allege that Lifetime also wrongfully discharged her in order to deprive her of medical benefits. The district court denied this request and entered judgment for Fuchs in the amount of $4,940 as stipulated plus $10,000 in attorney's fees.

## I.

## PUNITIVE DAMAGES

The central issue in this case is whether and with what limitations the TJRS allows the recovery of punitive damages by an employee terminated for serving as a juror. The Texas Civil Practice and Remedies Code provides:

§ 122.001. Juror's Right to Reemployment; Notice of Intent to Return

(a) A private employer may not terminate the employment of a permanent employee because the employee serves as a juror.

(b) An employee whose employment is terminated in violation of this section is entitled to return to the same employment that the employee held when summoned for jury service if the employee, as soon as practical after release from jury service, gives the employer actual notice that the employee intends to return.

§ 122.002. Damages and Attorney's Fees

(a) A person who is injured because of a violation of this chapter is entitled to damages, but the damages may not exceed an amount equal to six months' compensation at the rate at which the person was compensated when summoned for jury service.

(b) In addition to damages, the injured person is entitled to reasonable attorney's fees in an amount approved by the court.

On its face, § 122.002(a) grants an entitlement to damages to "a person who is *injured*" (emphasis added). This language lends itself to the obvious interpretation that because damages awarded by the statute are intended to compensate the em-

ployee for "injuries," the TJRS does not contemplate punitive damages, which do not compensate. The statute's limitation of damages to six months' compensation seems consistent with this interpretation: the allowable damages relate to the actual losses suffered by the employee when her employment is terminated in violation of § 122.001(a).

But in this diversity case, we must attempt to construe the TJRS as would Texas courts, and in light of their decisions, the "plain meaning" of § 122.002 turns out not to be so plain. Although no court has decided the precise question before us, the Texas Supreme Court has interpreted a similar statute, the Workers' Compensation Retaliation Statute.[1] That statute prohibits discharging an employee who files a workers' compensation claim and makes violators "liable for reasonable damages suffered by an employee as a result of the violation." In *Azar Nut Co. v. Caille,* 734 S.W.2d 667 (Tex.1987), the Texas Supreme Court rejected the argument—similar to the one above—that "reasonable damages *suffered*" did not include punitive damages, because an employee cannot "suffer" punitive damages. According to *Azar Nut,* "[t]he term 'damages' standing apart seems to be an unrestricted standard which would allow punitive damages." *Id.* at 669. As used in § 122.002(a), therefore, it must be inferred that the term "damages" does not restrict the employee to compensatory damages alone. Under governing Texas interpretation, an employee terminated in violation of the TJRS is entitled, in an appropriate case, to punitive damages.

We turn now to the second clause of § 122.002(a), which provides that "damages may not exceed an amount equal to six months' compensation." Citing the "intent" of the legislature and "public policy"

considerations, Fuchs argues that this limitation should not apply to punitive damages. That is, she would construe "damages" in the first clause differently from "damages" in the second clause. This strains credibility. The statute would read: A wrongfully terminated employee "is entitled to [compensatory and punitive] damages, but the [compensatory] damages may not exceed...." *Azar Nut* does not dictate this tortured reading. Significantly, the Texas Supreme Court there noted that "[t]he legislature refused to limit the employee's recovery to economic loss alone, therefore a greater measure of damages was obviously intended." 734 S.W.2d at 669. If, in the TJRS, the legislature did not limit an employee's recovery to economic loss alone, it *did* limit the recovery of actual and punitive damages to six months' worth of the employee's compensation.

This interpretation of the TJRS hardly contravenes the "important public policy" embodied in the statute, as Fuchs urges. Wrongfully terminated employees retain more than enough incentive to enforce the TJRS. Apart from damages, an employee's primary remedy for wrongful termination is reinstatement pursuant to § 122.001(b). Because § 122.002(b) entitles the employee to recover reasonable attorney's fees, her remedy will be costless. Moreover, the employee may, in an appropriate case, recover punitive damages *in addition* to gaining her job back. If the employee does not return to her former job, the TJRS gives her up to six months to find different employment. If punitive damages are warranted, she may receive the entire six months' worth of compensation even if she finds a new job sooner.

Our interpretation of the TJRS also provides considerable incentive for employers not to terminate employees who must take

---

1. That statute provides in part:

   Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or cause to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

   Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.
   Tex.Rev.Civ.Stat.Ann. art. 8307c.

time off to serve as jurors. Even where, as in this case, the terminated employee earns near the statutory minimum wage, the employer may be liable for nearly $5,000 in punitive damages. The losing employer must bear the cost of the employee's legal fees as well as its own fees to defend a TJRS enforcement suit. This type of litigation could easily end up costing an unsuccessful defendant as much as $50,000. Few companies would brazenly risk this sum to fire one employee in violation of the TJRS. Fuchs vigorously asserts that unlimited punitive damages would carry an even more potent deterrence. This argument is always true, but it does not detract either from the deterrence that actually exists or from the evident intent of the legislature to fashion a limited remedy for TJRS violations.

## II.

### MOTION TO AMEND COMPLAINT

■ Fuchs also challenges the district court's denial of her motions to continue the trial, to reopen discovery, and to amend her complaint, which were filed five days before trial. The amendment sought to assert additional claims against Lifetime for wrongful termination under section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140, and under Texas common law.[2] It alleged that "[i]n an attempt to deprive Plaintiff of her ERISA benefits, Defendant fired her under the pretext of jury service." These benefits consisted of medical insurance coverage under which Fuchs' husband and daughter incurred large claims.

The district court's decision is reviewed for abuse of discretion, and "unless there is

a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (Former 5th Cir. Nov.1981). Such substantial reasons include "undue delay ... and undue prejudice to the opposing party." *Id.* Both of these reasons justify the district court's refusal to allow the amendment. The ostensible reason for waiting until the eve of trial to add the ERISA claim is that Fuchs did not discover her claim until November 1989 when Lifetime, eighteen months after firing her, finally terminated her medical insurance coverage. Therefore, argues Fuchs, her amendment was not untimely because "for purposes of ERISA a cause of action does not accrue until an application [for benefits] is denied." *Paris v. Profit Sharing Plan*, 637 F.2d 357, 361 (5th Cir. Feb.1981), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981). Fuchs takes the quoted statement out of context, for it applies to claims "for benefits due to [an employee] under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Section 510 yields a claim not for wrongfully withheld benefits, but a claim for wrongful "discharge." But even if Fuchs' ERISA claim did not accrue until November 1989, a question we need not decide, she still waited seven weeks to move the district court for leave to amend. Had Fuchs shortly thereafter informed the court of her proposed amendment, any prejudice to Lifetime and to judicial administration might have been minimized. As it was, only five days before trial Lifetime was faced with an entirely new theory of recovery on which no discovery had been conducted. Trial would necessarily have

---

**2.** Section 510 provides in pertinent part:
  It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with any right to which such participant may become entitled under the plan....
  Fuchs' common law claim rested on *McClendon v. Ingersoll–Rand Co.*, 779 S.W.2d 69, 71 (Tex.1989), in which the Texas Supreme Court created a cause of action for wrongful discharge

when "the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." On certiorari, the United States Supreme Court reversed that decision, holding that ERISA "preempts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA." *Ingersoll–Rand Co. v. McClendon*, — U.S. —, 111 S.Ct. 478, 481, 112 L.Ed.2d 474 (1990).

been delayed to allow an amended answer and additional discovery, which would have forced Lifetime to bear further expenses.

We have repeatedly upheld the trial court's discretion to refuse amendments under similar circumstances. *See Mitsubishi Aircraft Int'l v. Brady*, 780 F.2d 1199, 1203 (5th Cir.1986); *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743, 751–52 (5th Cir.1985); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. Unit A Nov.1981). The district court did not abuse its discretion in denying Fuchs' motion to amend.

### III.

### INTEREST

■ The district court overlooked awarding Fuchs interest on her judgment. *Cavnar v. Quality Control Parking*, 696 S.W.2d 549, 554 (Tex.1985), held that "[p]rejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.-05, § 2." On its face, *Cavnar* was limited to "wrongful death, survival and personal injury actions," *id.* at 556, but our court has held that "it must be read to create a judicial scheme for the award of prejudgment interest in all cases," *Crown Cent. Petroleum Corp. v. National Union Fire Ins. Co.*, 768 F.2d 632, 637 (5th Cir.1985). Fuchs is therefore entitled to prejudgment interest according to art. 5069–1.05, § 2. *Cavnar* mandates that "interest shall begin to accrue on both pecuniary and non-pecuniary damages from a date six months after the occurrence of the incident giving rise to the cause of action." 696 S.W.2d at 555. In this case, prejudgment interest shall begin to accrue from six months after March 25, 1988, the date Fuchs was stipulated to have been fired. Finally, because attorney's fees do not fall within the term "pecuniary and non-pecuniary damages," they cannot bear prejudgment interest. *Accord Hervey v. Passero*, 658 S.W.2d 148 (Tex.1983) (per curiam).

■ Postjudgment interest on money judgments recovered in federal district court is governed by 28 U.S.C. § 1961(a). This statute applies even in diversity cases. *Nissho–Iwai Co. v. Occidental Crude Sales*, 848 F.2d 613, 622 (5th Cir.1988). Fuchs is entitled to interest from April 4, 1990, the date of judgment. Pursuant to Fed.R.App.P. 37, we direct the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees.

### IV.

### ATTORNEY'S FEES

■ The district court awarded Fuchs $10,000 in attorney's fees on the authority of § 122.002(b) of the TJRS. Fuchs attacks this amount as inadequate, principally because the many hours expended by her counsel yield a total fee of $47,138.06. Lifetime argues that any larger award would not bear a reasonable relationship to the amount of damages awarded. In this diversity case, Texas law governs the district court's determination of the appropriate fee. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975). We review this determination for abuse of discretion. *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 515 (5th Cir.1982) (per curiam).

Applying Texas law, the district court trimmed certain items from Fuchs' original request of $53,000, resulting in a claim of about $41,500. The court then reduced this amount to $10,000, applying the rule that an award of attorney's fees must bear some reasonable relationship to the amount of damages awarded and citing *Wayland v. City of Arlington*, 711 S.W.2d 232, 233 (Tex.1986) (per curiam). There are two problems with this drastic reduction. First, as Lifetime conceded at oral argument, time expended is the most important factor in the analysis of reasonableness. The costs ran high here in part because depositions had to be taken at Lifetime's Minneapolis headquarters. Second, *Wayland* states only that the amount of recovery awarded is *one factor* in the determina-

tion of a reasonable attorneys' fee. 711 S.W.2d at 234. The opinion also observes that Tex.Rev.Civ.Stat.Ann. art. § 2226 [governing awards of attorneys' fees in contract actions] is a remedial statute that should be liberally construed to effectuate its purpose. *Id.* The purpose of the TJRS is likewise remedial and can be brought about only by fair compensation for attorneys for relatively lower paid employees, whose compensation rates will not yield high damage awards. For such employees, the threat of prolonged, costly litigation could eviscerate the protection afforded by statutory fee-shifting. In light of these considerations, and given the novelty of the punitive damages issue, we conclude that $33,000 is an appropriate attorney's fee.

## V.

## CONCLUSION

We affirm the judgment of the district court insofar as it awarded Fuchs $4,940 in damages under the TJRS. We modify the judgment to include $33,000 in attorney's fees. We remand the case with instructions to award prejudgment and post-judgment interest in accordance with Part III of this opinion.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.

REYNALDO G. GARZA, Circuit Judge, specially concurring:

I concur in the disposition done by the majority because I see the difference in the statute involved in this case and the statute involved in *Azar Nut Co. v. Caille*, 734 S.W.2d 667.

To me, the granting of punitive damages in the dismissal of an employee from his employment because he has done his duty and served on a jury should be allowed. If punitive damages serve as a deterrent, a deterrent in this type of case is sorely needed.

However, we cannot legislate, and whether punitive damages should be al-

lowed or not must be left to the Texas Legislature.