**Curtis ADKINS and Mary Adkins, Plaintiffs–Appellees, Cross–Appellants,**

v.

**ASBESTOS CORPORATION, LTD., Defendant–Appellant, Cross–Appellee.**

Nos. 92–4005, 92–4031.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1993.

Decided March 17, 1994.

Robert L. Jennings, Jr., (argued and briefed), Henderson & Goldberg, Pittsburgh, PA, Scott E. Knox, Adams & Knox, Cincin-

nati, OH, for plaintiffs-appellees, cross-appellants.

James M. Kelly (argued and briefed), Robbins, Kelly, Patterson & Tucker, Cincinnati, OH, for defendant-appellant cross-appellee.

Before: GUY and SUHRHEINRICH, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Defendant, Asbestos Corporation, Ltd. (ACL), has appealed the monetary damages awarded to plaintiffs in this diversity products liability action. On appeal, ACL has asserted two claims: (1) that the plaintiffs failed to prove that Curtis Adkins' asbestosis was the proximate cause of their alleged injuries, and (2) that the district court's award of damages was excessive and unsupported by the evidence. Plaintiffs, Curtis Adkins (Adkins) and Mary Adkins (Mary Adkins), have cross-appealed the district court's denial of post-verdict interest.

The plaintiffs originally filed this action against several companies, including ACL, who supplied asbestos to the Philips Carey/Celotex plant in Lockland, Ohio where Curtis Adkins had been employed. The plaintiffs' case against all of the defendants was tried to a jury, however, it was understood that although the action against ACL, a Canadian corporation, was required pursuant to 28 U.S.C. § 1330 and 28 U.S.C. § 1603 to be tried to the court, the jury's disposition of the charges against ACL would be considered as an advisory opinion by the district court in arriving at its resolution of those charges. The jury returned a verdict in favor of plaintiffs against all defendants including ACL, which verdict against ACL was adopted by the trial court. The district court thereupon made specific findings of fact and conclusions of law on ACL's liability to plaintiffs, but failed to make separate findings of fact or conclusions of law addressing the issue of damages. Instead, the district court adopted the jury's advisory award of compensatory damages.

On appeal to this court in *Adkins v. GAF Corp.*, 923 F.2d 1225 (6th Cir.1991) ("*Adkins I*"), the liability of ACL was affirmed. The award of damages against ACL, however, was vacated because the district court had failed to make specific findings of fact and conclusions of law justifying its award of damages. *Adkins*, 923 F.2d at 1232. On remand, the district court awarded Adkins present damages in the amount of $125,000 and future damages in the amount of $1,030,-250. The court also awarded Mary Adkins present damages in the amount of $25,000 and future damages in the amount of $175,-000. These awards were reduced to the present value of $778,158.83 for Adkins and $129,877.50 for Mary Adkins. A prior settlement of $850,000 received by the plaintiffs was set-off against the damage award, resulting in net judgments of $47,185.58 for Adkins and $10,877.50 for Mary Adkins. The district court also ordered interest to accrue from the date of the final judgment. Plaintiffs then moved to amend the judgment, petitioning for interest from the date of the original jury verdict in 1987. The district court denied plaintiffs' motion. ACL filed a notice of appeal contesting the award of damages and the Adkins filed a cross-appeal challenging the denial of postjudgment interest from the date of the original jury verdict.

ACL initially argued that plaintiffs had not proven that their alleged damages were proximately caused by Adkins' asbestosis. This assertion is without merit. Proximate cause is integral to the issue of liability which was considered and affirmed in *Adkins I*.

As their next assignment of error, ACL asserted that the district court incorrectly calculated Adkins' life expectancy and his damages for future pain and suffering by applying a standard mortality table. Under Ohio law, " '[m]ortality tables have been accepted and considered competent evidence in Ohio for many years in an action for personal injuries, to show the probable duration of the life of an individual as bearing upon the financial loss and pecuniary damage by diminution of earning capacity.' " *Roberts v. Mutual Mfg. & Supply Co.*, 16 Ohio App.3d 324, 475 N.E.2d 797, 801 (1984) (quoting *Jarvis v. Hall*, 3 Ohio App.2d 321, 210 N.E.2d 414, 417 (1964)). The standard mortality tables reflect the life expectancies of normal healthy individuals. In Adkins' case, the table dis-

closed that a healthy individual of his age, race, and gender had an average life expectancy of 17.5 years. ACL argued that because of his pre-existing health problems, Adkins' projected life expectancy at the time he contracted asbestosis was less than the life expectancy of a healthy individual. In support of this position, ACL offered the testimony of Adkins' personal physician, Dr. Williams.

> The problem that [Adkins] has, in other words, his hypertension, elevated cholesterol level, and his probable asbestosis and the effects that it has on the oxygen level in his blood over a period of time, with that, or with those problems together his life expectancy is certainly shorter than it would be predicted to be than if he had none of these problems.

The doctor's statement, however, does not support defendant's position without ambiguity because in considering plaintiff's prior medical history, Dr. Williams apparently also considered Adkins' probable asbestosis as one of the contributing elements limiting his life expectancy. Moreover, several of plaintiffs' medical experts testified that his other pre-existing physical impairment and conditions had been stabilized and would not have prevented him from leading a normal life. From this testimony, it was not clearly erroneous for the district court to conclude that in the absence of asbestosis plaintiff could have had a normal life expectancy. Accordingly, the district court did not err in using the standard mortality table to determine plaintiffs' future damages.

■ ACL also challenged several other individual elements of the damages awarded to plaintiffs, including the amounts attributed to Adkins' pain and suffering and lost future earning, and the award to his wife for loss of consortium. A district court's award of damages is essentially a factual determination that this court should not disturb unless the trial court's findings of fact were clearly erroneous. *Neyer v. United States,* 845 F.2d 641, 644 (6th Cir.1988). After a careful review of the record, this court concludes that the district court's award of damages was supported by evidence in the record and not clearly erroneous. Accordingly, ACL's re-

maining assignments of error are without merit.

■ On cross-appeal, plaintiffs have challenged the district court's denial of their motion to calculate postjudgment interest from the date of the original verdict against ACL instead of the final judgment after remand. Postjudgment interest shall be "calculated from the date of the entry of the judgment...." 28 U.S.C. § 1961. In *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Supreme Court concluded that interest on a judgment should not accrue until the monetary damages have been meaningfully ascertained. In *Bonjorno,* the district court initially decided that a jury's award of damages in favor of plaintiffs was unsupported by the evidence. Subsequent to a new trial ordered by the trial court addressing the single issue of damages, the jury again awarded damages in favor of the plaintiffs. *Bonjorno,* 494 U.S. at 830–31, 110 S.Ct. at 1573–74. On appeal, the Supreme Court rejected plaintiffs' argument that postjudgment interest should accrue from the date of the original jury verdict and affirmed the lower court's decision to award interest from the date of the judgment after retrial. The court reasoned that

> "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1280 (3rd Cir. 1987). Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment.

*Bonjorno,* 494 U.S. at 836, 110 S.Ct. at 1576.

This circuit has interpreted *Bonjorno* in two decisions. In *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 917 F.2d 1413 (6th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 51, 116 L.Ed.2d 29 (1991) and *cert. denied,* —— U.S. ——, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991), the court affirmed the

**1352**

district court's refusal to permit interest to accrue from the original judgment. On appeal, this circuit reversed the verdict of the trial court for errors of law, vacated the judgment and remanded the case for a new trial. On appeal after retrial, the plaintiffs charged that the trial court had erred in awarding postjudgment interest from the date of the second judgment. This court concluded that allowing interest to accrue from the second judgment was proper because it was only after the conclusion of the second trial that monetary damages were meaningfully ascertained in accord with the Supreme Court's decision in *Bonjorno*. *Langenderfer*, 917 F.2d at 1447.

In *Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 954 F.2d 1263 (6th Cir.1992), this court distinguished *Langenderfer* and *Bonjorno* and awarded interest from the date of the original judgment because the original award had not been vacated on appeal but had simply been reduced by a certain amount following a court-ordered remittitur. Accordingly, in *Coal Resources* the court concluded that because the damages had been meaningfully ascertained at the date of the original judgment, it was proper to award post-judgment interest from that date. *Coal Resources*, 954 F.2d at 1274–75.

In the instant case, the original judgment was vacated in its entirety on the first appeal and the district court was ordered to support its award of damages with specific findings of fact and conclusions of law. On remand, the district court, for the first time, calculated the monetary worth of the injuries suffered by the plaintiffs and arrived at an award different from the damage award that resulted from the first trial. Accordingly, this court concludes that the damages suffered by the plaintiffs were not meaningfully ascertained as required by *Bonjorno* until the trial court issued its second judgment.

The court has reviewed and considered the remaining assignments of error and find them to be without merit.

For the reasons stated, the district court's decision is hereby **AFFIRMED.**