**TRANSMATIC, INC., Plaintiff–Appellee,**

v.

**GULTON INDUSTRIES, INC., Defendant–Appellant.**

**No. 98–1385.**

United States Court of Appeals,
Federal Circuit.

April 29, 1999.

Rehearing Denied; Suggestion for Rehearing
In Banc Declined June 24, 1999.

Richard W. Hoffmann, Reising, Ethington, Learman & McCulloch, PLLC, of Troy, Michigan, argued for plaintiff-appellee. With him on the brief were Andrew M. Grove and Jeanne–Marie Marshall.

Ira Jay Levy, Darby & Darby, P.C., of New York, New York, argued for defendant-appellant.

Before MICHEL, LOURIE, and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Circuit Judge GAJARSA.

LOURIE, Circuit Judge.

In 1995, we vacated and remanded a decision on damages awarded by the United States District Court for the Eastern District of Michigan in a patent infringement case between Transmatic, Inc. and Gulton Industries, Inc. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270 (Fed.Cir.1995). Gulton now appeals from the district court's remand Judgment and Order that Gulton pay Transmatic, *inter alia*, interest from the initial judgment date to the remand judgment date at the prejudgment rate. *See Transmatic, Inc. v. Gulton Indus., Inc.*, No. 90–CV–70987–DT (E.D.Mich. Apr. 9, 1998). Because we conclude that, under Sixth Circuit precedent, interest from the district court's initial judgment date to the remand judgment date should have been awarded at the postjudgment interest rate, we vacate and remand.

## BACKGROUND

In 1990, Transmatic filed suit against Gulton, asserting infringement of claim 1 of U.S. Patent 4,387,415. On cross-motions for summary judgment, the district court held that claim 1 was not proved to be invalid and was not literally infringed, but that factual issues existed regarding

Transmatic's doctrine of equivalents and willful infringement claims and Gulton's inequitable conduct defense. *See Transmatic Inc. v. Gulton Indus. Inc.,* 818 F.Supp. 1052, 27 USPQ2d 1561 (E.D.Mich. 1993) (*Transmatic I*). The district court impaneled an advisory jury to try these remaining issues. *See Transmatic Inc. v. Gulton Indus. Inc.,* 849 F.Supp. 526, 529, 31 USPQ2d 1225, 1226–27 (E.D.Mich.1994) (*Transmatic II*). The district court thereafter granted Gulton's motion for judgment as a matter of law on willful infringement. *See id.* The advisory jury found that the accused products infringed claim 1 under the doctrine of equivalents, that Transmatic did not engage in inequitable conduct, and that Gulton was liable for damages of approximately three million dollars in lost profits. *See id.* As required in all actions tried with an advisory jury (*see* Fed.R.Civ.P. 52(a)), the district court set forth factual findings and conclusions of law on the doctrine of equivalents issue and determined that the accused products infringed claim 1 under the doctrine. *See Transmatic II,* 849 F.Supp. at 530–32, 31 USPQ2d at 1227–29. The district court also set forth findings and conclusions of law on the willfulness and inequitable conduct issues when it denied both claims. *See id.* at 532–43, 849 F.Supp. 526, 31 USPQ2d at 1229–38. However, and most importantly for the history of this appeal, the district court failed to state any independent factual findings with regard to damages. Instead, the district court merely stated that it found the jury's damages verdict reasonable and supported by the evidence. *See id.* at 543, 31 USPQ2d at 1238–39.

On appeal, we (1) reversed the district court's summary judgment ruling of no literal infringement; (2) vacated its doctrine of equivalents finding as moot; (3) vacated and remanded its damage award; and (4) affirmed on the other issues raised. *See Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 35 USPQ2d 1035 (Fed. Cir.1995) (*Transmatic III*). We vacated and remanded the damage award because the court's opinion failed to explain the

award sufficiently to permit appellate review. *See id.* at 1275–76, 53 F.3d 1270, 35 USPQ2d at 1039–40. Specifically, we held that the district court failed to comply with the requirement of Federal Rule of Civil Procedure 52(a) that it "find the facts specifically" when it summarily rejected Gulton's challenge to Transmatic's lost profits claim. *See id.* We stated that we *presumed* that the district court considered and rejected Gulton's claim as either factually incorrect or unsupported by the evidence, but that the court's opinion did not indicate its basis for doing so. *See id.* at 1276, 53 F.3d 1270, 35 USPQ2d at 1040. We accordingly vacated the district court's damage award and remanded for the court to make the findings required by Rule 52(a) and to reconsider the amount of damages if appropriate. *See id.*

On remand, the district court issued "Supplemental Findings Regarding Damages" in which it explained its initial damages award in full detail. *See Transmatic, Inc. v. Gulton Indus., Inc.,* No. 90–CV–70987–DT (E.D.Mich. Jan. 23, 1998) (*Transmatic IV*). Specifically, the district court explained why Transmatic's damages award should include forced price cuts but not foregone price increases; why certain expenses were fixed, not variable, and thus not compensable; why damages did not include certain fixture sales; and why prejudgment interest should be awarded at the prime lending rate minus ten percent, compounded monthly. *See id.* at 8–19. Because the district court's factual findings did not require it to recalculate the damages award, it did not modify its initial award. *See id.* at 20. The district court thereafter reentered judgment in favor of Transmatic in the amount of $3,023,773, which included prejudgment interest calculated to October 1993. It also awarded Transmatic $1,119,588 in prejudgment interest for the period from October 1993 to the date of the district court's remand judgment, and postjudgment interest at the rate prescribed in 28 U.S.C. § 1961 (1994) for the time thereafter. *See Transmatic, Inc. v. Gulton Indus., Inc.,* 90–CV–

70987–DT (E.D.Mich. Apr. 9, 1998) (*Transmatic V*).

Gulton now appeals from the district court's decision to apply the prejudgment, rather than the postjudgment, interest rate from the date of the district court's initial judgment to the date of the remand judgment (hereinafter "the interim period"). It does not challenge the quantum of damages awarded or the pre- and postjudgment interest rates used by the district court. However, awarding prejudgment interest during the interim period resulted in a higher award to Transmatic because, during this period, the prejudgment interest rate awarded by the district court was several percentage points higher than the statutory postjudgment interest rate provided for under 28 U.S.C. § 1961. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

Gulton contends that Transmatic should have been awarded postjudgment interest for the interim period. Gulton asserts that the determination of the dividing line between pre and postjudgment interest is a procedural matter that requires us to follow Sixth Circuit law, in particular its interpretation of 28 U.S.C. § 1961(a), which states that postjudgment interest "shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a) (1994). According to Gulton, the Sixth Circuit determines the judgment date for purposes of calculating interest awards by examining both the facts and circumstances of the case in light of the "equity of § 1961" under *Bailey v. Chattem,* 838 F.2d 149 (6th Cir.1988), and the time when damages were "meaningfully ascertained" under *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Gulton argues that *Bailey*'s "equity" test and *Kaiser*'s "meaningfully ascertained damages" test both require that postjudgment interest be awarded during the interim period. Gulton argues that, in this case, damages were "meaningfully ascertained" at the time of the initial judgment because this court va-

cated the damage award on procedural, not substantive, grounds, and the only difference between the district court's initial and remand damages awards is an adequate explanation of its award. Gulton also argues that since we affirmed the infringement judgment on appeal, terminating prejudgment interest and beginning postjudgment interest at the initial judgment date would be "equitable" because it accords with both § 1961(a)'s purpose of compensating prevailing parties for any delays between judgment and payment and 35 U.S.C. § 284's purpose of fully compensating the patent owner for infringement damages. *See* 35 U.S.C. § 284 (1994) ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, . . . together with interest and costs as fixed by the court.").

Transmatic responds that the district court correctly applied the prejudgment interest rate during the interim period. Transmatic also raises a choice-of-law issue. Transmatic agrees that the dividing line between pre- and postjudgment interest is a § 1961 issue, but argues that we are not bound by Sixth Circuit law because the district court's authority to award prejudgment interest arises under § 284 of the patent statute, and that it is the policies of that provision which need to be considered. Transmatic notes that this should be an issue of Federal Circuit law for reasons of both patent jurisprudence and geographic uniformity. However, Transmatic does not point to any Federal Circuit case law, and only argues that we should follow a Ninth Circuit decision, *American Telephone & Telegraph Co. v. United Computer Systems,* 98 F.3d 1206 (9th Cir.1996), which involved both pre- and postjudgment interest awards, unlike the relevant Sixth Circuit cases which involved only postjudgment interest awards. Because the *AT & T* court held that the "equities" underlying § 1961(a) favor calculating interest "in a manner that more fully compensates the plaintiff," *id.* at 1211, Transmatic argues that the district

court properly applied the prejudgment interest rate during the interim period since it awarded Transmatic the higher interest rate. Transmatic also argues that affirming the district court's award would be "equitable" because it would require Gulton, the wrongdoer, to bear the burden caused by the district court's error, prevent Gulton from benefiting from the delay its appeal caused, accord with § 1961's purpose of eliminating an economic incentive to appeal, and accord with § 284's purpose of fully compensating the patent owner for the infringement it has suffered.

*A.   Choice of Law*

■ We first address whether reference to regional circuit law and § 1961 is appropriate in determining the correct dividing line for calculating pre- and postjudgment interest. In answering that question, we must initially decide whether the issue involved is one that concerns a subject unique to patent law. *See Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 855–56. (Fed.Cir.1991). We conclude that it is not.

First, the patent laws do not determine the issue before us. Section 284, the patent damages provision, does not connect the award of interest to any particular judgment date; that provision only prescribes damages and interest as a remedy for patent infringement. When interest begins or ends is not stated. In contrast, § 1961, the postjudgment interest provision, expressly specifies the date postjudgment interest begins. It states that

"[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.... *Such interest shall be calculated from the date of the entry of the judgment....*" 28 U.S.C. § 1961(a) (1994). There is a consensus among the regional circuit courts that even when prejudgment interest is awarded, postjudgment interest begins with the date of judgment; clearly, the "date of entry of judgment" demarcates the boundary between pre- and postjudgment interest.[1] The determination of that date is a matter of general procedural, not patent, law.

Second, neither pre- nor postjudgment interest awards are unique to patent law. Many other areas of law besides patent law, including contract, tort, insurance, admiralty, employment, securities, and civil rights, also provide for prejudgment interest awards under both statutory and common-law authority.[2] Postjudgment interest is awarded on monetary judgments recovered in all civil cases. *See* § 1961(a). We are not aware of any cases in which the dividing line between them was analyzed under a statutory provision other than § 1961. Thus, we find no reason to depart from the rulings of other circuits and remodel this as a § 284 issue.

■ Third, the rationale for awarding interest to successful plaintiffs is also not particular to patent law; prejudgment interest, like all monetary interest, is simply compensation for the use or forbearance of money owed. *See* Black's Law Dictionary 812 (6th ed.1990). No matter what area of

---

1.   *See, e.g., American Tel. & Tel. Co. v. United Computer Sys.,* 98 F.3d 1206 (9th Cir.1996); *Foley v. City of Lowell,* 948 F.2d 10 (1st Cir. 1991); *Fuchs v. Lifetime Doors, Inc.,* 939 F.2d 1275 (5th Cir.1991); *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.,* 933 F.2d 1433 (8th Cir.1991) (each decision determining the timing of pre- and postjudgment interest under § 1961).

2.   *See, e.g.,* 15 U.S.C. §§ 15(a), 15a (1994) (antitrust); 17 C.F.R. § 201.600 (1994), *reprinted in* 15 U.S.C. foll. § 78u (securities); 29 U.S.C. § 1132(a)(9) (1994) (ERISA); *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995)

(admiralty); *United States v. Texas,* 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (contract); *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.,* 513 U.S. 414, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995) (ERISA); *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (Title VII); *Morales v. Freund,* 163 F.3d 763 (2nd Cir.1999) (securities); *Gierlinger v. Gleason,* 160 F.3d 858 (2nd Cir.1998) (§ 1983); *United States v. Township of Brighton,* 153 F.3d 307 (6th Cir.1998) (CERCLA); *Cimino v. Raymark Indus., Inc.,* 151 F.3d 297 (5th Cir.1998) (tort); *Fratus v. Republic W. Ins. Co.,* 147 F.3d 25 (1st Cir.1998) (insurance).

law is considered, prejudgment interest, when awarded, is part of a successful plaintiff's complete compensation. *See, e.g., West Virginia v. United States,* 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987) (breach of contract) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). Postjudgment interest is similar, as it serves to further compensate a winning plaintiff from the time of a judgment until payment is made. *See §§* 1961(a), (b).

Finally, regarding nonpatent issues, "we have generally conformed our law to that of the regional circuits, without regard to the relationship of the issue to our exclusive jurisdiction, when there is existing and expressed uniformity among the circuits. Indeed, in such circumstances, a choice of different law might [be] problematic." *Biodex,* 946 F.2d at 856. Although the regional circuits do not uniformly interpret § 1961 in all respects, they agree that determining when judgment occurs for purposes of setting the dividing line between pre- and postjudgment interest is a § 1961 issue. *See supra,* note 1. Reformulating this issue as a § 284 patent law issue might thus be counterproductive to uniformity by injecting more uncertainty and conflict into this area of the law. For the foregoing reasons, we conclude that we must analyze this issue under § 1961 and defer to Sixth Circuit law.

## B. Section 1961

█ Having determined that Sixth Circuit law applies and that § 1961(a) is the governing statutory provision, we now address the specific application of that statute under Sixth Circuit law. Section 1961(a) provides that:

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... *Such interest shall be calculated from the date of the entry of the judgment,* at a rate equal to the

coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

28 U.S.C. § 1961(a) (1994) (emphasis added). *Kaiser* is the leading Supreme Court decision addressing the determination of the date from which a court should calculate interest when a damages judgment has been vacated. In *Kaiser,* the district court concluded that two successive jury verdicts awarding damages to the plaintiffs were unsupported by the evidence. After the first jury verdict, the district court vacated the judgment entered on that verdict and granted the defendant's motion for a new trial. However, the second jury awarded the plaintiffs a higher damage award than the first jury. Upon defendant's motion, the court granted judgment notwithstanding the verdict as to part of the damages awarded, vacated the judgment entered on the second jury verdict, and entered a third judgment on a reduced damages amount. The Third Circuit vacated the third judgment entered by the district court and reinstated the judgment entered on the second jury's damage award. The Supreme Court granted certiorari to consider the calculation of postjudgment interest, and held that, under § 1961, postjudgment interest should run from the date of the second vacated judgment. The Court reasoned that

"[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1280 (3rd Cir.1987). Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment.

*Kaiser,* 494 U.S. at 836. The Court thus established a "meaningful ascertainment" test for determining when postjudgment interest begins.

In this case, both Transmatic and Gulton argue that we must use an "equities approach" in addition to *Kaiser* to determine the date from which postjudgment interest should be calculated. Before *Kaiser,* it was clear that the Sixth Circuit took the "equity of the statute" approach to the calculation of post-judgment interest. *See Oates v. Oates,* 866 F.2d 203, 208 (6th Cir.1989); *Bailey,* 838 F.2d at 153; *United States v. Bank of Celina,* 823 F.2d 911, 914–15 (6th Cir.1986). However, since the Supreme Court decided *Kaiser* in 1990, the Sixth Circuit has decided four cases addressing the calculation of postjudgment interest: *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 917 F.2d 1413 (6th Cir. 1990), *Coal Resources, Inc. v. Gulf & Western Industries, Inc.,* 954 F.2d 1263 (6th Cir.1992), *Adkins v. Asbestos Corp., Ltd.,* 18 F.3d 1349 (6th Cir.1994), and *Kelly v. HUD,* 97 F.3d 118 (6th Cir.1996). In each of these cases the Sixth Circuit followed *Kaiser* 's "meaningfully ascertained damages" approach without using or even mentioning its pre-*Kaiser* "equities" approach. *See Langenderfer,* 917 F.2d at 1447; *Coal Resources,* 954 F.2d at 1274–75; *Adkins,* 18 F.3d at 1351–52; *Kelly,* 97 F.3d at 122. Therefore, it seems clear that, since the 1990 *Kaiser* decision, the Sixth Circuit has abandoned the "equities" approach for the Supreme Court's "ascertained damages" approach.

In this case, the damages were meaningfully ascertained at the time of the initial district court judgment because that damages decision was ultimately correct on the merits. In our earlier decision, we stated that we presumed that the district court considered and rejected Gulton's claimed adjustments to Transmatic's damages award, but we could not discern that from the court's summary opinion. *See Transmatic III,* 53 F.3d at 1276. The district court's error was procedural, and we ordered it to make explicit that which we suspected was implicit in its decision, as required by Rule 52(a). On remand, the district court explained its earlier decision and awarded the same amount. *See Transmatic IV,* slip op. at 8–19. Thus, we can infer from the fact that the district court awarded the same amount as the initial judgment, and the fact that Gulton does not appeal the merits of this award, that our suspicions were correct—damages were meaningfully ascertained, but just not explained, at the date of the initial judgment.

The parties ask us to choose between a higher prejudgment interest rate and a lower postjudgment interest rate for an interim period, in part, by considering the "equities"—Gulton argues that awarding the lower postjudgment interest rate is adequate compensation and Transmatic argues that awarding the higher prejudgment interest rate would be closer to full compensation. Because the Sixth Circuit has so clearly departed from the "equity" approach in favor of *Kaiser* 's "ascertained damages" test, we will not evaluate the equities of the case despite both parties' urgings. In *Kaiser,* the Supreme Court held that, regardless of the equities, it would not award a higher postjudgment interest rate than that afforded by § 1961 because Congress made the legislative judgment as to the applicable interest rate, and "courts may not legislate to the contrary." *Kaiser,* 494 U.S. at 840. The same consideration applies here. Congress has mandated a postjudgment interest rate, and we too must not "legislate to the contrary" by basing our analysis on whether the rate of interest provided by Congress under § 1961 is "equitable." Transmatic directs us to *AT & T,* which held that when prejudgment interest is involved, the § 1961 "equities" approach favors calculating interest "in a manner that more fully compensates the plaintiff." *AT & T,* 98 F.3d at 1211. However, *AT & T* is a Ninth Circuit case and, as we have discussed, *supra,* the Sixth Circuit has not followed the "equities" approach since *Kaiser.*

We are also unpersuaded by Transmatic's argument that awarding the higher prejudgment interest rate for the interim period would require Gulton, the wrongdoer, to bear the burden of the district court's error, prevent Gulton from benefiting from the delay it caused by appealing, and eliminate any economic incentive to appeal. The legislative history of § 1961 shows that Congress specifically intended postjudgment, not prejudgment, interest to "eliminate an economic incentive ... for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate during the pendency of the appeal." S.Rep. No. 97–275, at 11 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 21. Thus, we must defer to Congress's judgment concerning the best means to meet its policy goals.

Finally, we are unpersuaded by Transmatic's argument that the Sixth Circuit's precedents do not apply because these cases only awarded postjudgment interest, whereas this case also involves a prejudgment interest award. Other courts have considered the fact that prejudgment interest was awarded, either under statutory or common-law authority, irrelevant in determining the date postjudgment interest should begin under § 1961. *See Foley,* 948 F.2d at 22; *Fuchs,* 939 F.2d at 1280; *Happy Chef Sys.,* 933 F.2d at 1437–38. In summary, we conclude that the district court erred in determining that interest during the interim period should be calculated at the prejudgment rate.

## CONCLUSION

The district court erred in awarding prejudgment interest during the interim period. Accordingly, the Judgment and Order entered by the United States District Court for the Eastern District of Michigan on April 9, 1998, is hereby vacated and the case is remanded for calculation of interest in a manner consistent with this opinion.

*VACATED AND REMANDED.*

GAJARSA, Circuit Judge, dissenting.

The facts presented in this case are quite simple. In 1990, Transmatic sued Gulton for patent infringement. In 1993, the district court impaneled an advisory jury to determine, among other issues, whether there was infringement under the doctrine of equivalents. The advisory jury found infringement with damages of approximately $3 million in lost profits. The district court adopted the advisory jury's conclusions with respect to the infringement issue and the damages award.

On appeal, this court vacated the damages award because the district judge had not complied with Rule 52(a) of the Federal Rules of Civil Procedure, which provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." We held that, given the district court's sparse findings and reasoning, we could not evaluate the damages award. We therefore *vacated* the damages award and remanded for "further factual findings and [reconsideration of] the amount of the award, if appropriate, in light of the court's supplemental findings." *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1276, 35 USPQ2d 1035, 1040 (Fed.Cir.1995).

On remand, the district court provided the necessary factual findings and reasoning and reached the same damages award as it had previously. The district court then awarded Transmatic prejudgment interest under 35 U.S.C. § 284 for the period from October 1993 until its remand decision. The district court also awarded postjudgment interest under 28 U.S.C. § 1961 for the period after its remand decision.

In the present appeal, Gulton argues that the operative judgment date at which prejudgment interest must end under 35 U.S.C. § 284 and postjudgment interest must begin under 28 U.S.C. § 1961 is the date of the first judgment of the district court that was vacated by our court.

## DISCUSSION

### A. The Question of Deference

I am deeply troubled by this part of today's majority opinion for two reasons. First, the issue of deference is not relevant to this case because the determination of the operative judgment date requires interpretation of Section 284, which is clearly within our exclusive mandate of interpreting the Patent Act. Second, even if deference were at issue today, the majority has announced a new test for deference that is in conflict with prior case law from our court.

The first question we are faced with is whether deference to regional circuit law is appropriate in deciding at what point prejudgment interest under 35 U.S.C. § 284 ends and postjudgment interest under 28 U.S.C. § 1961 begins. As this court has previously explained, our initial inquiry in deciding whether deference is due is "whether the law that must be applied, whether procedural or substantive, is one '... over which this court does not have exclusive appellate jurisdiction.'" *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 855–56, 20 USPQ2d 1252, 1256 (Fed.Cir.1991) (citation omitted). We noted that this inquiry has also been phrased as (1) whether the issue concerns a subject which is not unique to patent law or which is not specific to our statutory jurisdiction, or (2) whether the procedural issue may be related to substantive matters unique to the Federal Circuit. *See id.* at 856. The Federal Circuit has recognized that "resolution of the issue of deference in particular cases would depend on whether the procedural matter should 'pertain to' or be 'related to' patent issues, [such that] they have a direct bearing on the outcome.'" *Id.* at 857 (citing *Panduit Corp. v. All States Plastic Mfg., Co.*, 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984)). The *Biodex* court concluded its analysis of the state of the law on deference by stating "*Panduit* did not engrave a fixed meaning to the terms 'unique to,' 'related to,' or 'pertain[ing] to,' our exclusive statutory subject matter jur-

isdiction, but instead recognized that each case must be decided by reference to the core policy of not creating unnecessary conflicts and confusion in procedural matters." *Id.*

In applying this framework, the Federal Circuit has not deferred in the resolution of all procedural issues merely because those issues also arise in cases having nothing to do with patent law. We have held that the applicable standard for the issuance of a preliminary injunction, which is a procedural issue not limited to patent law, involved substantive matters unique to the Federal Circuit and therefore we declined to give deference. *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 15 USPQ2d 1469 (Fed. Cir.1990). We have also held that the determination of whether a post-verdict motion is a prerequisite to appellate review of the sufficiency of the evidence underlying a jury verdict is a procedural issue that is to be decided under Federal Circuit law because it "bears an essential relationship to matters committed to our exclusive control by statute." *Biodex*, 946 F.2d at 858–59. We have also held that federal due process analysis with respect to personal jurisdiction, although a procedural issue, is intimately tied to substantive patent law, and thus merits no deference. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564, 30 USPQ2d 1001, 1006 (Fed.Cir.1994) ("[T]he due process issue ... is a critical determinant of whether and in what forum a patentee can seek redress for infringement of its rights.... The creation and application of a uniform body of Federal Circuit law in this area would clearly promote judicial efficiency, would be consistent with our mandate, and would not create undue conflict and confusion at the district court level.").

In the case at bar, the determination of the operative judgment date, i.e., the judgment that serves as the dividing line between prejudgment interest under 35 U.S.C. § 284 and postjudgment interest

under 28 U.S.C. § 1961, is not a determination that merely is "closely related to the exercise of our mandate" or "bears an essential relationship to our mandate." Rather, this determination requires interpretation of 35 U.S.C. § 284, the provision in the Patent Act of 1952 that provides for damages for patent infringement, which ordinarily requires prejudgment interest be awarded as part of the damages. Section 284 is a statutory provision that falls within the exclusive jurisdiction of the Federal Circuit. Because the determination of the operative judgment date requires interpretation of Section 284, we cannot defer to regional circuit law, otherwise we abdicate our duty to interpret patent laws. In sum, deference is not even at issue in this case as we are interpreting the Patent Act itself!

The majority opinion, however, holds that prejudgment interest under Section 284 of the Patent Act must end at the district court's initial judgment *and* that such a determination does not involve the patent laws and therefore requires deference. The majority reaches this result through inconsistent reasoning. The opinion begins by stating that "the patent laws do not determine the issue before us. Section 284 ... does not connect the award of interest to any particular judgment date.... When interest begins or ends is not stated." However, the term "interest" in Section 284 clearly refers to prejudgment interest only. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211, 217 USPQ 1185 (1983). Even if it were unclear whether Section 284 applied to pre- or postjudgment interest, this would be an even greater reason to give no deference to regional circuit law. Under such circumstances, there would be an apparent overlap or conflict between Section 284 and Section 1961 and it should be within the jurisdiction of the Federal Circuit to resolve this tension rather than allowing the tension to be resolved by regional circuit law. I find the majority's opinion allowing deference on this issue to be inconsistent with our mandate.

Another factor that seems to influence unduly the majority is that the identification of the date of judgment as the dividing line between pre- and postjudgment interest is "a matter of general, not patent, law." The majority seems to be greatly persuaded that, because many areas of law also allow for awards of pre- and postjudgment interest, such awards are not "unique to patent law" and therefore we must defer.

This is simply not the test for determining deference that we have used in the past and we should not begin its use now. That the same issue may arise in different areas of law in addition to patent law is not a reason for automatically giving deference. As this court stated in *Biodex*, "we have not deferred in the resolution of all procedural issues merely because that issue might separately arise in a case having nothing to do with the patent laws." *Biodex*, 946 F.2d at 858. This court has, as I described above, held that procedural issues, such as the applicable standard for the issuance of a preliminary injunction, the reviewability of fact findings in the absence of post-verdict motions, and the analysis of personal jurisdiction under the federal due process clause, are closely related to our mandate and require no deference. These issues all appear in contract, tort, insurance, admiralty, employment, securities, and civil rights cases and yet we have refused to give deference on these issues when patents are involved.

The majority is employing a simplistic rule for deference: If an issue can appear in a nonpatent context, then deference should be given to the regional circuit because the issue is not "unique" to patent law. Basically, the majority is announcing a new rule for determining deference today that is in conflict with prior Federal Circuit case law. This may explain why the majority fails to cite to any Federal Circuit cases during its analysis of the three factors that it believes shows no deference is required.

For these reasons, I would not defer to regional circuit law.

## B. The Question of When Damages are Meaningfully Ascertained

Sections 284 and 1961 are complementary statutory provisions and should therefore be interpreted consistently.[1] The Supreme Court has discussed the application of Section 1961 to a vacated judgment in *Kaiser* and the logic of that case should apply in our present analysis of Section 284 and its interplay with Section 1961. In *Kaiser*, Bonjorno sued Kaiser for antitrust violations and the district court entered a directed verdict for Kaiser. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). The appellate court reversed, holding the case had to be tried by a jury. The trial resulted in a jury verdict for Bonjorno of approximately $5.4 million (the "first jury verdict"). The district court granted Kaiser's motion that the evidence did not support the jury award and granted a new trial as to damages. The retrial resulted in a jury verdict of approximately $9.5 million (the "second jury verdict"). Upon a motion for remittitur, the district court agreed to lower the second jury verdict. The appellate court vacated the district court's judgment and reinstated the second jury verdict.

Eventually, Bonjorno sought postjudgment interest under Section 1961 and argued to the Supreme Court that postjudgment interest should have accrued after the first jury verdict. The Supreme Court stated:

> "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the pay-

ment by the defendant." ... Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment.

*Kaiser*, 494 U.S. at 835–36 (citation omitted). Because the district court had determined that the evidence did not support the first jury verdict and *vacated* that judgment, the Supreme Court found that the first jury verdict on damages had not been meaningfully ascertained and therefore postjudgment interest could not accrue from that date. The Supreme Court did not use hindsight to determine that the first jury verdict on damages really was supported by the evidence because the second jury verdict was for almost twice the original amount of damages.

In this case, the majority relies on the benefit of twenty-twenty hindsight to determine that the original damages award by the district court was meaningfully ascertained. The majority here presumes, infers, and suspects that the original damages award issued by the district court was correct. Because the original judgment was eventually "reinstated" on remand to the district court, the majority, with such foresight that would make Merlin blush, concludes that the damages in the first judgment were reasonably ascertained. No matter how many inferences and presumptions we may draw from the first judgment issued by the district court, we cannot overcome the fact that we *vacated* the district court's original damages award because it was not supported by sufficient findings of fact and reasoning to

---

1. The operative judgment date is somewhat analogous to a property line dividing the land of two neighbors. That property line cannot be drawn without reference to the legally operative documents and concerns pertaining to *both* of the neighbors. In other words, the property line cannot be drawn merely by looking at the deed of one neighbor and ig-

noring the other neighbor. Similarly, the operative judgment, which is the dividing line between prejudgment interest and postjudgment interest, cannot be determined without considering *both* Sections 284 and 1961 and analyzing their explicit language, underlying policies, and relevant caselaw.

permit appellate review. As the *Kaiser* opinion dictates, a damages award which is not supported by the evidence is not ascertainable. *See id.* at 836. Therefore, a damages award that is vacated for lack of factual findings and reasoning cannot be a damages award that has been "meaningfully ascertained." There is an incongruity in the majority's reasoning because, if the original award had been supported by the evidence, we would not have vacated it in the first place.

Also, as a procedural matter, once this court vacated the first judgment, it was not enforceable by Transmatic. A vacated judgment is annulled and canceled. Because it is legally void, it never existed and therefore it becomes unenforceable. The premise which the majority uses to determine ascertainability of the original judgment is that the damages amount was not amended by the district court. The majority therefore presumes, infers, and suspects that the damages were meaningfully ascertained. A vacated judgment cannot be resurrected by presumption, inference or suspicion.[2]

In addition, "[t]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Id.* at 835–36. In this case, the defendant did not "drag its feet" and deprive the plaintiff of compensation after the entry of the initial district court judgment because this judgment was vacated, i.e., this damages judgment was void and there was no specific sum of money due to the plaintiff as a result.

The majority opinion is also not in accord with the plain language of 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any *money judgment* in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of entry of the judg-

ment. . . ." 28 U.S.C. § 1961(a) (emphasis added). A vacated judgment is not a "money judgment in a civil case recovered in district court" and therefore cannot be the relevant judgment for purposes of calculating the date of entry of such a money judgment.

For these reasons, I respectfully dissent. I would hold that Federal Circuit law is applicable and that the operative judgment date for purposes of prejudgment interest pursuant to 35 U.S.C. § 284 and post-judgment interest pursuant to 28 U.S.C. § 1961 is the judgment date of the second determination of the district court.

---

**2.** What if the damages had been reinstated, but were increased by $10? By $100? By $100,000? At what point would we say that

the vacated damages were no longer reasonably ascertained in hindsight?